# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 21-cr-00216 (JDB) |
| v. | : | |
| | : | |
| LEO BRENT BOZELL IV, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

The United States of America respectfully submits this memorandum in opposition to the motion of defendant Leo Brent Bozell IV ("Defendant") to dismiss counts one, three, and four of the indictment.  Dkt. No. 33 ("Motion").  This Court should deny the Motion for the reasons that follow.

## BACKGROUND

On March 12, 2021, the grand jury returned a seven-count indictment charging Defendant with (1) obstructing an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and (2); (2) destruction of government property and aiding and abetting, in violation of 18 U.S.C. §§ 1361 and 2; (3) entering and remaining in a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(1); (4) disorderly and disruptive conduct in a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(2); (5) disorderly conduct in a Capitol building, in violation of 40 U.S.C § 5104(e)(2)(D); (6) physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and (7) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  (Dkt No. 8.)

The charges in the indictment stem from conduct that occurred on January 6, 2021, when Defendant participated in a riot at the U.S. Capitol Building that disrupted a joint session of Congress.  On that afternoon, the United States Congress was conducting an official proceeding required by the 12th Amendment of the United States Constitution and by federal statute to count the electoral votes of the 2020 presidential election, and to certify and declare the persons elected as President and Vice President of the United States.  (U.S. Const. Amend. XII; 3 U.S.C. § 15; Dkt No. 1 (Affidavit in Support of Criminal Complaint at 1-2.)  During the proceeding, a large group of individuals gathered outside the U.S. Capitol Building, unlawfully broke through temporary and permanent barricades, and used force and destroyed property to gain entry into the U.S. Capitol Building.  (Dkt No. 1 at 2.)  The joint session of the United States Congress was suspended for hours until later that evening, as rioters engaged in unlawful conduct throughout the U.S. Capitol Building.  (*Id*.)

Defendant was among the first group of rioters to enter the U.S. Capitol Building near the Senate Wing Doors, a little before 2:15 p.m.  As Defendant approached the U.S. Capitol Building, he tore down scaffolding to help move barricades in an effort to gain access to the building.  (Screenshot attached as Exhibit A.)  At the Senate Wing doors, Defendant struck an exterior window several times with his hand or an object, causing the window to crack and ultimately break (other rioters assisted with the breaking of the window).  (Screenshots attached as Exhibit B.)  Defendant, with scores of other rioters, climbed through the window that he helped break and entered the U.S. Capitol Building.  (Screenshots attached as Exhibit C.)

Defendant walked through the hallways of the U.S. Capitol Building, and entered the Senate Gallery.  There, Defendant used his hands to move the direction of a C-SPAN video camera, to cause the video camera to point to the ground instead of towards the Senate Floor.  (Screenshots

2

attached as Exhibit D.)  Defendant then entered the Senate Floor and walked around with other rioters.  (*Id*. at 2; Exhibit E; Dkt No. 1 at 5-11.)  Defendant departed the U.S. Capitol Building at around 3:07 p.m., having spent almost an hour inside.  (Screenshot attached as Exhibit F.)

On December 17, 2021, Defendant filed a motion under Federal Rule of Criminal Procedure 12(b) to dismiss counts one, three, and four of the indictment, charging him with obstructing an official proceeding and aiding and abetting, in violation of 18 U.S.C.  §§ 1512(c)(2) and (2); entering and remaining in a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(1); and disorderly and disruptive conduct in a restricted building and grounds, in violation of 18 U.S.C. § 1752(a)(2); respectively. As explained herein, Defendant's challenges to those counts fail, and the Court should deny the Motion.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c)(1) requires that "[t]he indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and that "[f]or each count, the indictment . . . must give the official or customary citation of the statute, rule, regulation, or other provision of law that Defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1).  The indictment must set forth "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet."  *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004) (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)).  An indictment must "(1) allege the essential facts constituting the offense, (2) allege each element of the offense, so that fair notice is provided, and (3) be sufficiently distinctive that a verdict will bar a second prosecution for the same offense." *United States v. Martinez*, 764 F. Supp. 2d 166, 170 (D.D.C. 2011) (quotations and citations omitted).

Federal Rule of Criminal Procedure 12(b) provides that a motion alleging a defect in the indictment, including failure to state an offense and lack of specificity, generally must be brought prior to trial.   *See* Fed. R. Crim. P. 12(b)(3)(B).  Although a court's supervisory powers provide the authority to dismiss an indictment, "dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015).  "An indictment must be viewed as a whole and the allegations must be accepted as true in determining if an offense has been properly alleged."  *United States v. Bowdin*, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).  *Accord*, *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).  The district court must view the allegations in the indictment "in the light most favorable to the government" when determining whether "the factual allegations in the indictment . . . were sufficient to charge the offense as a matter of law." *United States v. Sharpe*, 438 F.3d 1257, 1258-59 (11th Cir. 2006).  The operative question is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed.  *Bowdin*, 770 F. Supp. 2d at 146.  In light of those standards, each of the challenged Counts in Defendant's indictment sufficiently state an offense, and the Motion should be denied.

## **ARGUMENT**

In December 2021, five different judges of this Court ruled on similar, and in some cases identical, challenges to those Defendant presents in the Motion.  In each instance, those judges denied the motions to dismiss and rejected each of the claims raised by the defendants.  Those decisions are:

> *United States v. Ronald Sandlin*, 1:21-cr-88, __ F. Supp. 3d. __, 2021 WL 5865006  (Judge Friedrich) (December 10, 2021) (attached as Exhibit G)

*United States v. Thomas Caldwell*, 1:21-cr-28, __ F. Supp. 3d. __, 2021 WL 60627818 (Judge Mehta) (December 20, 2021 (attached as Exhibit H)

*United States v. Aaron Mostofsky*, 1:21-cr-138, 2021 WL 6049891 (Judge Boasberg) (December 21, 2021) (attached as Exhibit I)

*United States v. Ethan Nordean*, 1:21-cr-175, 2021 WL 6134595 (Judge Kelly) (December 28, 2021) (attached as Exhibit J)

*United States v. Patrick Montgomery*, 1:21-cr-46, 2021 WL 6134591 (Judge Moss) (December 28, 2021) (attached as Exhibit K)

*United States v. Guy Reffitt*, 1:21-cr-32 (Judge Friedrich) (December 29, 2021) (attached as Exhibit L)

Additionally, on July 2, 2021, Judge McFadden considered the same arguments raised by Defendant here with respect to counts three and four of the indictment, and rejected those arguments and denied a motion to dismiss:

*United States v. Couy Griffin*, 1:21-cr-92, ___ F. Supp. 3d. __, 2021 WL 2778557 (Judge McFadden) (July 2, 2021) (attached as Exhibit M).

These prior judicial decisions addressed the same arguments raised by Defendant here, and each memorandum opinion includes a comprehensive analysis of the relevant legal authorities. The legal reasoning in these judicial decisions demonstrates that Defendant's motion to dismiss must be denied.

**A.    There Is No Basis To Dismiss Count One Of The Indictment**

Defendant argues that count one of the indictment, charging a violation of 18 U.S.C. §§ 1512(c)(2) and (2) (obstructing an official proceeding and aiding and abetting), should be dismissed (Motion at 12-40).  He's wrong.  Count one states "the elements of the offense intended to be charged and sufficiently apprise[s] the defendant of what he must be prepared to meet."

*United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004) (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)).

Count one charges that Defendant "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, and did aid and abet others known and unknown to do the same; that is, [Defendant and others] forcibly entered the United States Capitol to, and did, stop, delay, and hinder Congress's certification of the Electoral College vote[,] . . . in violation of Title 18, United States Code, Sections 1512(c)(2) and (2)." (Dkt No. 8 at 2.) Section 1512(c)(2) provides for criminal punishment to anyone who "corruptly obstructs, influences, or impedes any official proceeding, or attempts to do so." 18 U.S.C. § 1512(c)(2).

### 1.  Certification of the Electoral College Vote was an "Official Proceeding"

Defendant incorrectly argues that the certification of the Electoral College vote by Congress was not an "official proceeding" (Motion at 12-29). In Defendant's view, the proceeding was "not one with a truth-seeking function carrying the threat of a penalty, i.e. administering justice" (*id*. at 19-20). But the term "official proceeding" is defined broadly in the statute to include, among other things, "a proceeding before the Congress." 18 U.S.C. § 1515(a)(1). Had the statute been intended to limit the applicable "proceeding[s] before the Congress" to those with an adjudicative function, it would have used limiting language similar that used in 18 U.S.C. § 1505 (proscribing obstruction of "the due and proper administration of the law under which any pending proceeding is being had" by a federal department or agency).

All of the decisions issued by judges of this Court in cases related to the January 6 riot have agreed that the Congressional proceeding on January 6, 2021, was an "official proceeding." *See, e.g., Sandlin Opinion* (Exhibit G) at 6-9 ("Congress's Joint Session to certify the electoral results is . . . a formal hearing" that qualifies as an "official proceeding"); *Caldwell Opinion* (Exhibit H)

6

at 8-16 (the certification of the Electoral College vote was a "proceeding before the Congress" in
that it involved "[t]he business conducted by a court or other official body" and it took place
"before the Congress," meaning that it "me[]t the definition of an 'official proceeding.'"); *Nordean
Opinion* (Exhibit J) at 9-12 (the certification of the Electoral College vote was a "series of actions"
that "require[d] 'some formal convocation,' making it a 'proceeding before the Congress,' 18
U.S.C. § 1515(a)(1)(B), and thus an 'official proceeding'"); *Montgomery Opinion* (Exhibit K) at
8-21 ("the certification of the electoral vote plainly qualifies as an 'official proceeding'"); *Reffitt
Opinion* (Exhibit L) at 2-3 ("Congress's Joint Session constitutes as an 'official proceeding' . . .
as it has the 'trappings of a formal hearing before an official body'"); *Mostofsky Opinion* (Exhibit
I) at 21-22 (agreeing with the analysis in the *Sandlin Opinion* and in the *Caldwell Opinion* that the
Joint Session of Congress was a "formal hearing" such that it qualified as an "official
proceeding.").

Those decisions establish that there is no legal authority supporting Defendant's view that
an "official proceeding" requires some adjudicative, investigatory, or truth-seeking function.  For
example, none of the cases cited by Defendant even construed the scope of "a proceeding before
Congress" under § 1515(a)(1)(B).  *See United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir.
2013) (§ 1515(a)(1)(C) "does not encompass a criminal investigation"); *United States v. Ramos*,
537 F.3d 439, 462 (5th Cir. 2008) (an official proceeding under § 1515(a)(1)(C) "does not apply
to routine agency investigations of employee misconduct").  Other decisions Defendant cites
*affirmed* convictions for obstruction and so cannot support Defendant's claim that those cases set
limits on the obstruction statutes at issue, much less on § 1512(c)(2).  *See, e.g., United States v.
Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (preliminary inquiries of Inspector General of USAID
was a proceeding for purposes of 18 U.S.C. § 1505); *United States v. Perez*, 575 F.3d 164, 169

(2nd Cir. 2009) (investigation of BOP corrections officers regarding assault on an inmate was an official proceeding under § 1512 and 1515(a)(1)(C); the investigation was "sufficiently formal" where investigators "had to make findings and decide whether to refer the matter to senior BOP officials").[1]

This Court should join the unanimous views of its colleagues and find that the January 6, 2021, Congressional vote to certify the result of the 2020 Electoral College vote for President was a "proceeding before the Congress," the unlawful obstruction of which violates 18 U.S.C. § 1512(c)(2).

2. **The § 1512(c)(2) Charge Does Not Ensnare the Court in 'Political Questions'**

Defendant claims that allowing the § 1512(c)(2) charge to proceed would force this Court to resolve non-justiciable "political questions."[2] (Motion at 16.)   He also argues that the constitutionality of the Electoral College Act ("ECA"), 3 U.S.C. § 15, is somehow relevant to the

---

[1] In any event, the certification of the Electoral College vote was an adjudicatory proceeding because: (a) it involved the convening of a Joint Session of Congress, a deliberative body over which a government officer, the Vice President as President of the Senate, "presid[es]." 3 U.S.C. § 15; (b) just as the judge and parties occupy specific locations in a courtroom, so too do the Members within the "Hall." *See* 3 U.S.C. § 16 (President of the Senate is in the Speaker's chair; the Speaker "immediately upon his left"; the Senators "in the body of the Hall" to the right of the "presiding officer"; the Representatives "in the body of the Hall not provided for the Senators"; various other individuals "at the Clerk's desk," "in front of the Clerk's desk," or "upon each side of the Speaker's platform"); (c) the body renders a "yes/no" judgment on whether to certify the votes cast by Electors in the presidential election, 3 U.S.C. § 15; (d) objections are lodged, considered, and resolved, *id.*; and (e) the Joint Session cannot be dissolved until it has declared a result, 3 U.S.C. § 15. See *Nordean* Opinion (Exhibit J) at 10-11.

[2] A narrow exception to the general rule that courts have a responsibility to resolve cases properly before it, the political question doctrine bars judicial resolution of certain issues textually and exclusively committed by the Constitution to one or both of the other branches of the Federal Government.  *See Baker v. Carr*, 369 U.S. 186, 217 (1962)

determination of whether Congress was engaged in an "official proceeding." (Motion at 12-19.) It is not.

Whatever the merits of Defendant's argument that some aspects of the ECA are unconstitutional—and he provides no legal precedent supporting that claim—this Court has no reason to address it here. Defendant does not contest that the Constitution provides that the entire Congress must, at a minimum, attend a session at which the Vice President as President of the Senate opens, counts, and ultimately certifies the victor in the presidential election. *See* Motion at 12. A proceeding in which the Constitution requires the presence of the full Congress, including the President of the Senate, is sufficient to establish a "proceeding before the Congress." 18 U.S.C. § 1515(a)(1)(B). *See Mostofsky Opinion* (Exhibit I) at 22 ("Nor does determining that Congress's certification is an 'official proceeding' require the Court to wade into a political question, . . . as this determination does not turn on whether the Electoral Count Act is constitutional or Congress's ability to set rules for the vote certification").

But even if some elements of the Electoral Count Act were constitutionally suspect, it would not follow that a full session of Congress meeting to certify the Electoral College vote is not an "official proceeding" as that term is defined in 18 U.S.C. § 1515(a)(1). Defendant suggests (Motion at 15) that the ECA is best understood as a "non-binding internal House rule." Even were that true, "there is no question that it sets forth a list of official procedures. And that Congress has long followed those procedures – including on January 6, 2021 – illustrates the formality of the certification process and why it qualifies as a 'proceeding before the Congress.'" *Nordean Opinion* (Exhibit J) at 12 n. 2.[3]

---

[3] Defendant also suggests that he could not have violated § 1512(c)(2) because Congress purportedly "suspended" the joint session an hour before the rioters entered the Capitol in order

### 3.    *Ejusdem Generis* **Does Not Require Dismissal of the § 1512(c)(2) Charge**

Defendant argues that the statutory construction canon of *ejusdem generis* limits the scope of proscribed conduct under § 1512(c)(2) to the impairment of evidence such as records and documents.  Defendant contends that § 1512(c)(2)'s reference to acts that "otherwise obstruct[], influence[], or impede[] any official proceeding," refers only to conduct similar to that enumerated in § 1512(c)(1), *i.e.*, "alter[ing], destroy[ing], mutilate[ing], or conceal[ing] a record, document, or other object ... with the intent to impair the object's integrity or availability for use in an official proceeding."  (Motion at 25-28.)

This claim fails.  The prior judicial decisions to consider this argument in the context of the January 6 riot have all rejected it, and the courts have declined to dismiss the charge on this ground.  *See*, *e.g., Mostofsky Opinion* (Exhibit I) at 22-23 ("Such a position . . . would have the Court ignore the plain meaning of the words contained in (c)(2) – to wit, 'obstructs, influences, or impedes' – which cannot be read so narrowly. . . . The use of 'otherwise' [in (c)(2)] is better understood as 'clarif[ying] that the latter prohibits obstructions by means *other than* document destruction.") (*citing Sandlin Opinion* (Exhibit G) at 10); *Sandlin Opinion* (Exhibit G) at 9-16 ("Based on the plain text, the broader context, and the weight of authority, the Court concludes that § 1512(c)(2) covers a broader set of obstructive acts than the defendants content."); *Caldwell Opinion* (Exhibit H) at 40-41 ("*Ejusdem generis* . . . come[s] into play only to resolve ambiguity,

---

for the Senate and House to separately rule on an objection, and only resumed the joint session after all the rioters were removed.  (Motion at 34.)  The suggestion appears to be that the rioters did not obstruct the joint session, but only "separate House deliberations" (*id*.).  But this argument is just sophistry. The joint session could not be resumed for several hours because of the riot. That certainly amounts to obstruction, which in common parlance means "block," "impede," or "hinder."  *See Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (citing dictionaries); *United States v. Zolin*, 491 U.S. 554, 572 (1989) ("that production of the additional evidence will not unduly disrupt or delay the proceedings").

not to create it. . . . There is no such ambiguity here."); *Nordean Opinion* (Exhibit J) at 14-18

("Reading Section 1512(c)(2) to include conduct unrelated to the impairment of evidence is most

consistent with the text and structure of the statute . . ."); *Montgomery Opinion* (Exhibit K) at 28-

39 ("In short, because the two prongs of Section 1512(c) are not parallel, the *noscitur* and *ejusdem*

canons have little bearing on the interpretative question before the Court.").

The canon of *ejusdem generis* counsels that "where general words follow specific words

in a statutory enumeration, the general words are [usually] construed to embrace only objects

similar in nature to those objects enumerated by the preceding specific words." *Yates v. United

States*, 574 U.S. 528, 545 (2015). *Ejusdem generis* applies only when a statute sets forth "a list of

specific items separated by commas and followed by a general or collective term." *Ali v. Federal

Bureau of Prisons*, 552 U.S. 214, 225 (2008). "The absence of a list of specific items" in

§ 1512(c)(2) "undercuts the inference embodied in *ejusdem generis* that Congress remained

focused on the common attribute when it used the catchall phrase." *Id*.

Defendant's core mistake is to conflate two separate statutory clauses, § 1512(c)(1) and

(c)(2), in order to incorrectly theorize a unitary list of similar terms. That did not occur in the cases

he cites. *Compare Yates*, 574 U.S. at 531 (construing the phrase, "tangible object," as used in 18

U.S.C. § 1519, which lists, in a single provision, "a false entry in any record, document, or tangible

object") and *Begay v. United States*, 553 U.S. 137, 140 (2008) (construing the phrase, "otherwise

involves conduct that presents a serious potential risk of physical injury to another," as used in 18

U.S.C. § 924(e)(2)(B)(ii), which lists, in a single provision, "burglary, arson, or extortion, involves

use of explosives, or otherwise involves conduct that presents a serious potential risk of physical

injury to another"), *abrogated by Johnson v. United States*, 576 U.S. 591 (2015).

Section 1512(c) contains no such unitary list in a single subsection. Instead, it contains two separate clauses, (c)(1) and (c)(2), showing that Congress did not "remain[] focused on [a] common attribute" when enacting § 1512(c)(2). *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 225 (2008) (rejecting application of *ejusdem generis*). Section 1512(c)(2) says nothing about "impairing" an "object's integrity or availability." *Compare* 18 U.S.C. § 1512(c)(1) *with* 1512(c)(2).

### 4.    Section 1512(c)(2) Is Not Unconstitutionally Vague

Defendant incorrectly contends that § 1512(c)(2) is unconstitutionally vague as applied to him because (1) it does not provide fair notice that the term "official proceedings" includes the counting of the Electoral College votes, and (2) it uses the term "corruptly," which the D.C. Circuit determined was vague in evaluating a different federal statute (18 U.S.C. § 1505) in *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991).

The prior judicial decisions to address these arguments have uniformly rejected them. Several addressed and rejected the "official proceedings" argument. *See, e.g., Mostofsky Opinion* (Exhibit I) at 23 ("it is difficult to fathom that a reasonable person would not believe the Electoral College certification was an official proceedings, especially since the definition of that term includes 'a proceeding before Congress'; indeed, this is precisely the reason why the January 6 rioters wished to stop it."); *Nordean Opinion* (Exhibit J) at 19-20 ("the term 'official proceeding' is not vague as applied to Congress's certification of the Electoral College vote"); *Caldwell Opinion* (Exhibit H) at 16-17 ("Here, the definition of 'official proceeding' presents no vagueness problem. Section 1515(a)(1) defines 'official proceeding' to include 'a proceeding before the Congress.' 'The plain, obvious, and common sense' meaning of that definition . . . reaches the Certification of the Electoral College vote . . . .").

12

As discussed above, there is nothing vague about concluding that an "official proceeding," which was defined to include "a proceeding before the Congress," to include the January 6, 2021, Joint Session of Congress to count the votes of the Electoral College.

Several of the prior judicial decisions also addressed and rejected the argument that the term "corruptly" was unconstitutionally vague.[4]  *See, e.g., Mostofsky Opinion* (Exhibit I) at 23-24 (holding that the term "corruptly" in § 1512(c)(2) is not vague either on its face or as applied to the defendant); *Sandlin Opinion* (Exhibit G) at 18-25 ("Assuming that the government can meet its burden at trial, which is appropriate to assume for purposes of this motion, the defendants were sufficiently on notice that they corruptly obstructed, or attempted to obstruct, an official proceeding under § 1512(c)(2)."); *Nordean Opinion* (Exhibit J) at 20-26 ("The statute requires (1) intent to obstruct, influence, or impede and official proceeding, and (2) wrongfulness, in this case the use of unlawful means to do so.  These requirements provide the 'minimal guidelines' necessary 'to govern law enforcement.'"); *Caldwell Opinion* (Exhibit H) at 18-25 ("It suffices for present purposes to say that to prove that Defendants acted 'corruptly,' the government, at least, will have to show that they acted with consciousness of their wrongdoing.  So defined, the term 'corruptly' is not unconstitutionally vague."); *Montgomery Opinion* (Exhibit K) at 39-50 ("Section

---

[4] To prove a violation of § 1512(c)(2), the government must establish that the defendant acted "corruptly," that is, "with an improper purpose and to engage in conduct knowingly and dishonestly with specific intent to subvert, impede, or obstruct."  *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013).  *See also United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instruction defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Matthews*, 505 F.3d 698, 706 (7th Cir. 2007) (upholding instruction defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice"); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").  The requirement of "corruption" is a clear-cut and adequate limiting principle that distinguishes Defendant's conduct in this case from, for instance, standing peacefully outside the Capitol grounds and urging by-passers to email their representatives not to attend the certification vote.

1512(c)(2) provides a discernible standard when legally construed, and it thus passes constitutional muster, both on its face and as applied.").

Those decisions properly applied the vagueness doctrine, which is narrow. The challenger must overcome the "strong presumptive validity that attaches to an Act of Congress," which has led the Supreme Court "to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Products Corp.*, 372 U.S. 29, 32 (1963). A statute is not void for vagueness simply because its applicability is unclear at the margins, *United States v. Williams*, 553 U.S. 285, 306 (2008), or because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). Rather, a statute is impermissibly vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *Williams*, 553 U.S. at 306; *see Smith v. Goguen*, 415 U.S. 566, 578 (1974). The "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it *reasonably clear* at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997) (emphasis added). The relevant question is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Sineneng-Smith*, 982 F.3d 766, 775 (9th Cir. 2020), quoting *Lanier*, 520 U.S. at 266.

Defendant relies on *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), but that case addressed a different statute, 18 U.S.C. § 1505, that prohibited corruptly obstructing a congressional inquiry. There, the D.C. Circuit held that the term "corruptly" was "vague … in the absence of some narrowing gloss." *Id*. at 378. The statute "does not at all clearly encompass lying

14

to the Congress," *id.*, and "the term 'corruptly' [was] too vague to provide constitutionally adequate notice" as to which lies it prohibited, *id.* at 379.

As the prior judicial decisions indicated, *Poindexter* is inapposite for three reasons.  First, the D.C. Circuit narrowly confined Poindexter's analysis to § 1505's use of "corruptly," and expressly declined to hold "that term unconstitutionally vague as applied to all conduct." 951 F.2d at 385. In *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit rejected a *Poindexter*-based vagueness challenge to 18 U.S.C. § 1512(b) and affirmed the conviction for "corruptly" influencing the testimony of a potential witness at trial. *Id*. at 629-630.  Other courts have recognized "the narrow reasoning used in *Poindexter*" and "cabined that vagueness holding to its unusual circumstances." *United States v. Edwards*, 869 F.3d 490, 502 (7th Cir. 2017); *see id.* at 501 (Section 1512(b) was not unconstitutionally vague; "Even the *Poindexter* majority would have had no difficulty finding the term 'corruptly' sufficiently clear as applied to a defendant's efforts to persuade someone else to lie to Congress"); *United States v. Kelly*, 147 F.3d 172, 176 (2d Cir. 1998) (distinguishing *Poindexter* and rejecting a vagueness challenge to "corruptly" in 26 U.S.C. § 7212(a)); *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (declining "to extend *Poindexter* [which "must be read narrowly"] to another section of the obstruction-of-justice statutes"); *see id*. at 1301 ("It is reasonable to attribute to the 'corruptly persuade' language in Section 1512(b), the same well-established meaning already attributed by the courts to the comparable language in Section 1503(a), *i.e.*, motivated by an improper purpose."); *United States v. Brenson*, 104 F.3d 1267, 1280 (11th Cir. 1997) (same for 18 U.S.C. § 1503).

Second, *Poindexter* predated *Arthur Andersen v. United States*, 544 U.S. 696 (2005). There, the Court explained the terms "'[c]orrupt' and 'corruptly' are normally associated with wrongful, immoral, depraved, or evil." *Id*. at 705, citing BLACK'S LAW DICTIONARY 371 (8th ed.

15

2004); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 512 (1993), and AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 299-300 (1981). That commonplace definition of "corruptly" should apply to § 1512(c)(2) because there is no statutory definition of the term for that subsection. *Cf.* 18 U.S.C. § 1515(b) (defining "corruptly" "as used in section 1505," as "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information.").

Third, courts have encountered little difficulty when addressing § 1512(c)'s elements following *Arthur Andersen*. Indeed, judicial decisions and model jury instructions have incorporated that formulation of "corruptly" when construing § 1512(c)(2). *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (quoting *United States v. Mintmire*, 507 F.3d 1273, 1289 (11th Cir. 2007)); *Gordon*, 710 F.3d at 1151 (quoting *Friske*; *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013); Seventh Circuit Pattern Criminal Jury Instruction for § 1512 ("A person acts 'corruptly' if he or she acts with the purpose of wrongfully impeding the due administration of justice.").

Defendant contends that charging him with violating § 1512(c)(2) "raises questions about discriminatory law enforcement" (Motion at 39).  But Defendant does not attempt to show he was targeted for prosecution because of his political beliefs.   To demonstrate discriminatory prosecution based on the exercise of First Amendment rights, the defendant "may not simply point out the similarities he shares with the other unprosecuted" persons.  *United States v. DeChristopher*, 695 F.3d 1082, 1097 (10th Cir. 2012).   Instead, he "must show the other defendants' circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Id.* (cleaned up).  *See*

*generally United States v. Armstrong*, 517 U.S. 456, 465 (1996) ("To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."). Judge McFadden recently rejected a similar defense claim of selective prosecution based on political beliefs. *See United States v. Judd*, No. 1:21-CR-00040 (TNM), 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021).

Defendant also complains that he was unfairly charged with felonies while, in his view, similarly situated rioters were charged with only misdemeanors (Motion at 39-40). "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (cleaned up).

Moreover, the vagueness doctrine asks whether "*the statute* … provide[s] a person of ordinary intelligence fair notice of what is prohibited." *Williams*, 553 U.S. at 304 (emphasis added). Defendant cites no authority that charging decisions postdating the offense conduct have any bearing on this inquiry.

Section § 1512(c)(2) was intended to reach broadly: it "operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific" obstruction offense. *United States v. Petruk*, 781 F.3d 438, 447 (8th Cir. 2015) (quoting *United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014)). The statute provided fair notice to Defendant not to "corruptly" obstruct a proceeding before Congress by tearing down scaffolding, smashing open a window and climbing through it, and otherwise joining a mob of rioters to halt to the certification of the Electoral College vote.

5.      **The Rule of Lenity Does Not Require Dismissal of the § 1512(c)(2) Charge**

Defendant contends that the "rule of lenity" requires dismissal of count one of the indictment because, in Defendant's view, even if the government's arguments above are correct, "it is plainly not unambiguously so."  (Motion at 34-35.)

Again, the prior judicial decisions to address this issue have uniformly declined to dismiss the § 1512(c)(2) charge based upon this mistaken argument.  *See, e.g., Mostofsky Opinion* (Exhibit I) at 24 (the rule of lenity "last resort . . . has no application where the statute is reasonably clear on its face and contains no grievous ambiguity or uncertainty"); *Sandlin Opinion* (Exhibit G) at 18 ("Lenity only comes into play when the court has exhausted all tools of statutory construction and is still left with 'grievous ambiguity' (citation omitted).  For the reasons stated, the Court concludes that § 1512(c)(2), along with the definition of 'official proceeding' in § 1515(a), are unambiguous."); *Nordean Opinion* (Exhibit J) at 26-27 ("Section 1512(c)(2) is not ambiguous after application of the ordinary canons of statutory construction.  Thus the rule of lenity does not apply.").

Those decisions properly applied the rule of lenity, which is a canon of "last resort." *Guedes v. Bureau of Alcohol, Tobacco and Firearms*, 920 F.3d 1, 27-29 (D.C. Cir. 2019).  It applies only "if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (cleaned up). Otherwise stated, it "applies only if, after seizing everything from which aid can be derived, ... we can make 'no more than a guess as to what Congress intended." *Muscarello v. United States*, 524 U.S. 125, 138 (1998) (cleaned up).

18

That is not this case. As shown above, and as reflected in the prior judicial decisions, Defendant has failed to identify any infirmities in the language used in the count one of the indictment, and consequently the rule of lenity has no role to play.

6.      **The § 1512(c)(2) Charge is Not an *Ex Post Facto* Law**

Defendant contends that charging him under § 1512(c)(2) violates the *Ex Post Facto* clause of the Fifth Amendment of the U.S. Constitution, because the prosecution would, in Defendant's view, involve a "novel construction" of the statute.  (Motion at 36-37.)  This argument proceeds from his claim that all previous prosecutions for violation of that statute involved obstruction of "proceedings before a tribunal that mimic a court of law" (*id*.).   As that argument fails as demonstrated above, so does this one.

Once again, the prior judicial decisions to address this issue uniformly rejected the view that Defendant urges here.  *See, e.g., Mostofsky Opinion* (Exhibit I) at 24-25 ("The Court has already rejected the notion that this is such a novel interpretation, and it cannot say that applying it to his conduct is so "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue" (citing *Bouie v. City of Columbia*, 378 U.S. 347 (1964)); *Nordean Opinion* (Exhibit J) at 27-28 ("Section 1512(c)(2)'s application to the allegations in the First Superseding Indictment is 'fairly disclosed by the text (citation omitted).  Thus, the Due Process Clause does not require dismissal.")

Those decisions properly applied the relevant law. "The *ex post facto* prohibition forbids the Congress and the States to enact any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (citing cases).  "Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit

19

individuals to rely on their meaning until explicitly changed." *Id*. at 28-29 (citing cases). "The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation." *Id*. at 29 (citing cases).

So construed, the "*Ex Post Facto Clause* is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191 (1977) (citation omitted). Nevertheless, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Lanier*, 520 at 266. *See United States v. Bailey*, 259 F.3d 1216, 1219 (10th Cir. 2001) ("because he challenges judicial interpretations of a statute rather than the statute itself, Bailey raises a due process argument rather than one based directly on the *Ex Post Facto* Clause").

But a judicial interpretation of a criminal statute violates due process only if it is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964); s*ee also Johnson v. Kindt*, 158 F.3d 1060, 1063 (10th Cir. 1998) ("The test for determining whether the retroactive application of a judicial decision violates due process is essentially one of foreseeability."). A ruling would violate due process, for instance, if it both disadvantaged the defendant and conflicted with prior judicial announcements on the same subject. *See Williams v. Filson*, 908 F.3d 546, 577 (9th Cir. 2018) (no *ex post facto* violation where "Williams has identified no pre-*Cavanaugh* authority from Nevada courts that is inconsistent with the rule *Cavanaugh* adopted, and we have found none"; "[w]e cannot say that the Nevada Supreme Court's interpretation of § 200.033(5) constitutes an "unexpected and indefensible" break with prior Nevada law"); *Washington v. Boughton*, 884 F.3d 692, 701 (7th Cir. 2018) (no *ex post facto* violation where the "state court's

20

extension of [its prior decisions] to the materially similar facts here was not an 'unexpected and indefensible' departure from established Wisconsin law, but rather within the permissible scope of 'incremental and reasoned development of precedent that is the foundation of the common law system'); *Bailey*, 259 F.3d at 1219 ("we reject [the due process] argument both because [defendant] cites no authority from this or any other court interpreting § 3583 in the manner he seeks and because interpreting § 3583(e)(3) and Rule 32.1(a)(2) to allow post-term revocation hearings is clearly foreseeable").

Defendant cites not a single case holding that §§ 1512(c)(2) and 1515(a)(1)(B) prohibit the obstruction of only those proceedings before Congress that are adjudicatory. He cannot demonstrate that there would be a due process violation under these circumstances.

### 7.    The § 1512(c)(2) Charge does Not Violate the First Amendment.

Defendant's final argument with respect to Count one is that § 1512(c)(2) is invalid under the First Amendment as applied to him. (Motion at 37-40.) Defendant incorrectly describes § 1512(c)(2) as "characterize[ing] protest per se as obstruction of congressional proceedings," and that the statute "is being unconstitutionally applied as to the specific protected activity for which he is charged." (*Id.* at 37).

The prior judicial decisions to address this argument in the context of the January 6 riot have uniformly rejected it. *See, e.g., Mostofsky Opinion* (Exhibit I) at 25 ("Indeed, Mostofsky is not being charged for his views or his expression of them; rather, it is his *actions* in entering a restricted area in an alleged effort to impede the Electoral College certification that has landed him under indictment"); *Caldwell Opinion* (Exhibit H) at 47-49 ("Section 1512(c)(2) targets only 'corrupt' acts of obstructing, influencing, or impeding an official proceeding. Therefore, it does not proscribe lawful or constitutionally protected speech.") (citation omitted); *Nordean Opinion*

(Exhibit J) at 28-30 ("Quite obviously, there were many avenues for Defendants to express their opinions about the 2020 presidential election, or their views about how Congress should perform its constitutional duties on January 6, without resorting to the conduct with which they have been charged.").

Those decisions were correct. Count one charges Defendant with unlawful and non-expressive *conduct* that occurred on January 6; the statute has no interest in Defendant's political views, motives in joining the riot, or anything he said or otherwise expressed. *See generally Shotts*, 145 F.3d at 1301 ("by prohibiting only that persuasion which has an improper purpose, Section 1512(b) does not impermissibly limit protected speech, and provides adequate notice that such persuasion is proscribed"); *see id*. ("[W]e hold that the term "corruptly" as used in 18 U.S.C. § 1512(b) is neither unconstitutionally broad nor vague.").

The First Amendment states "Congress shall make no law ... abridging the freedom of speech."  Constitution, Amendment One.  When assessing a First Amendment challenge to a charge brought by a defendant in a criminal case, the court must determine whether the defendants' conduct "constituted expressive conduct."  *Texas v. Johnson*, 491 U.S. 397, 403, (1989).  If not, the challenge fails.  *Id*.  If the conduct was expressive, the court must determine if the statute is "related to the suppression of free expression."  *Id*.  If the statute is not related to the suppression of free expression, the court applies the "less stringent standard" for noncommunicative conduct laid out in *United States v. O'Brien*, 391 U.S. 367, 377 (1968).  *Johnson*, 491 U.S. at 403.  If the statute is related to the suppression of free expression, the court must apply a "more demanding standard" to determine if the government's interest justifies imposition of criminal liability. *Id*.

Defendant argues that, under *O'Brien*, the § 1512(c)(2) charge is permissible only if (1) "it is within the constitutional power of the government"; (2) "it furthers an important or substantial

governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest."  (Motion at 37-38.)  Defendant contends this prosecution violates two of the *O'Brien* factors: (1) the government's interest is related to the suppression of free expression; and (2) the incidental restriction on First Amendment freedoms is greater than is essential to the furtherance of that interest." *Id*.

But, as the prior judicial decisions held in similar cases, Defendant here violated § 1512 because of his non-expressive conduct of unlawfully entering the Capitol grounds and building with the intent to disrupt the on-going certification vote.  Just as a bank robber could not avoid prosecution by shouting in the middle of the robbery, "Stop the steal," the fact that Defendant may have been also communicating while engaging in the unlawful conduct is of no moment.  *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65-66 (2006) ("[W]e reject[] the view that conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea.").  And regardless of his motives, Defendant's charged conduct of using force to enter the Capitol in order to disrupt the proceedings was not "expressive," so his First Amendment challenge fails before reaching the *O'Brien* factors.

But even if the *O'Brien* factors apply, the First Amendment challenge still fails.  The government's paramount interest in protecting the integrity and continuity of Congressional proceedings is unrelated to any incidental impact that the application of the law may have on the ability to petition the government for a redress of grievances. Section § 1512 goes no further than what is "essential" to prevent the obstruction of official proceedings of Congress. The Supreme Court has upheld restrictions on demonstrations in Washington, D.C., with far less at stake than the proceedings to count the Electoral College votes. *See Community for Creative Non-Violence,*

468 U.S. at 299 (upholding a ban on overnight camping on the National Mall and finding a "substantial Government interest in conserving park property, an interest that is plainly served by, and requires for its implementation, measures such as the proscription of sleeping that are designed to limit the wear and tear on park properties").  Count one presents no First Amendment violation under these circumstances.

**B.     There Is No Basis To Dismiss Counts Three or Four of the Indictment**

Defendant incorrectly argues that counts three and four of the indictment, charging violations of 18 U.S.C. §§ 1752(a)(1) (entering and remaining in a restricted building or grounds) and (a)(2) (disorderly and disruptive conduct in a restricted building or grounds), must be dismissed.  (Motion at 40-45).  Each of these counts  sufficiently states "the elements of the offense intended to be charged and sufficiently apprise[s] the defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004) (quoting *Russell v. United States*, 369 U.S. 749, 763 (1962)).

Defendant argues that these charges must be dismissed because they can be brought only where the United States Secret Service has restricted a particular area, and the indictment does not allege that it was the Secret Service that set up the temporary and permanent barricades (Motion at 49).  According to Defendant, "[t]he plain meaning of § 1752 unequivocally indicates that the Secret Service alone sets restricted areas." (*Id.*)  Defendant also argues that, even if he is wrong, (a) the statute is unconstitutionally vague as to him (*id*. at 43), (b) the rule of lenity would require dismissal  (*id*. at 44-45), and (c) the government's purported "novel construction" of the statute would operate as an unconstitutional *ex post facto* law (*id*. at 45).

All of these arguments are meritless because the statute nowhere suggests that its reach was limited only to areas restricted by the Secret Service.

1.      **Section 1752 is Not Limited to Areas Restricted by the Secret Service**

Section 1752(a) states:

(a) Whoever--

> (1) knowingly enters or remains in any restricted building or grounds without lawful authority to do so;

> (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions;

* * * *

> (5) * * * *shall be punished as provided in subsection (b).

Section 1752(c) (1) provides three alternate definitions for the term "restricted buildings and grounds."

(c) In this section--

> (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area--

>> (A)   of the White House or its grounds, or the Vice President's official residence or its grounds;

>> (B)   of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

>> (C)   of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

(2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

18 U.S.C. § 1752(c).

The definition that applies here is § 1752(c)(1)(B), "any posted, cordoned off, or otherwise restricted area ... of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." "Person[s] protected by the Secret Service" include the Vice President and the Vice President-elect. *See* § 1752(c)(2); 18 U.S.C. § 3056(a)(1) ("Under the direction of the Secretary of Homeland Security, the United States Secret Service is authorized to protect the … the Vice President"). The proscribed conduct within a "restricted building or grounds" includes, as relevant here, "knowingly and unlawfully entering or remaining … without lawful authority to do so," § 1752(a)(1) (Count 5), and "knowingly and with intent to impede or disrupt … government business," engaging in "disorderly or disruptive conduct" that "in fact, impedes or disrupts" government business,"  § 1752(a)(2) (Count 6).

The statutory text contains no requirement that the Secret Service be the only entity that can restrict an area under § 1752.  The prior judicial decisions to consider this question have been unequivocal on this point.  *See, e.g., Griffin Opinion* (Exhibit M) at 5-10 ("The statute focuses on perpetrators who knowingly enter a restricted area around a protectee, not on how it is restricted or who does the restricting. . . . It also reflects the reality that while the Secret Service has primary responsibility for guarding its protectees, *see* 18 U.S.C. 3056, it invariably relies on other law enforcement agencies for support.""); *Mostafsky Opinion* (Exhibit I) at 26-27 ("The text plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area.");

26

*Nordean Opinion* (Exhibit J) at 38-41 ("Defendants are wrong that the Secret Service must have restricted the Capitol building and its grounds for Section 1752 to apply.  As several other courts in this district have already found, the statute imposes no such requirement.").

In *Griffin*, Judge McFadden also explained why the legislative history undercuts Defendant's argument:

> From its enactment in 1970 until 2006, Section 1752 contained a provision that authorized the Treasury Department (of which, until 2003, the Secret Service was a component) to "designate by regulations the buildings and grounds which constitute the" protected residences or offices of Secret Service protectees and "prescribe regulations governing ingress or egress to ... posted, cordoned off, or otherwise restricted areas where" protectees were present. 18 U.S.C. § 1752(d) (1970)….
>
> By 2006 Congress rewrote the statute, in the process eliminating reference to the Treasury Department and to any "regulations" from any executive branch agency. 18 U.S.C. § 1752 (2006). More, the new statute criminalized merely entering or remaining in a restricted area; the old statute required further action, such as impeding government business, obstructing ingress or egress, or physical violence. *Compare* 18 U.S.C. § 1752(a)(1) (2006) *with* 18 U.S.C. § 1752(a) (1970). But Congress did not stop there. In 2012 it reconfigured the statute, adding the term "restricted buildings or grounds" and then defining it under subsection (c), as it appears today. 18 U.S.C. § 1752(a) (2012). Congress did not take that opportunity to clarify who can or must do the restricting, leaving it open-ended. But Congress did lower the *mens rea* requirement, striking the requirement that a defendant act "willfully."

*Griffin Opinion* (attached as Exhibit M) at 4.

Defendant relies on *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005), but that case offers him no support.  There, the Court of Appeals *affirmed* a § 1752 conviction for entering an airport hangar that was restricted by the Secret Service ahead of a rally involving the President. 416 F.3d at 309.  On appeal, Bursey challenged the District Court's finding that he acted willfully. Rejecting that claim, the Fourth Circuit pointed to evidence proving that Bursey must have known

he was violating the law by remaining in the restricted area, including evidence that "Bursey understood the area to have been restricted by the Secret Service, and thus a federally restricted zone." *Id*.

According to Defendant's tautology, the Secret Service restricted the airport hangar; the airport hangar was a restricted area under § 1752; therefore, only the Secret Service can restrict areas for purposes of § 1752. As Judge McFadden explained, "the Fourth Circuit [in *Bursey*] had no reason to analyze [whether the Secret Service must impose the restrictions] because all parties agreed that the Secret Service secured the hangar. There is no holding—binding or persuasive— on this question." *Griffin Opinion* (attached as Exhibit M) at 5.

### 2.    Defendant's Related Arguments are Unavailing

Defendant incorrectly claims for related reasons that § 1752 as applied to his conduct is unconstitutionally vague (Motion at 43-44), that the rule of lenity requires dismissal of the charge (*id*. at 44-45), and that such a "novel construction" of the statute would constitute an *ex post facto* law (*id*. at 45).  These arguments all fail for the reasons set forth above; nothing in the statute remotely suggests that it proscribes conduct only in areas restricted by the Secret Service.  The prior judicial decisions to consider these points unanimously rejected them.  *See*, *e.g., Mostofsky Opinion* (Exhibit I) at 27 (rejecting all three arguments because "the statute says nothing about any requirement that the Secret Service be involved in restricting an area, so there is no likelihood of potential violators being misled."); *Griffin Opinion* (Exhibit M) at 11-13 ("the statute does not invite arbitrary enforcement by criminalizing common activities or giving law enforcement undue discretion . . . This law is no trap awaiting the unway."); *Nordean Opinion* (Exhibit J) at 40-41

("The text is clear and gives fair notice of the conduct it punishes, and it is not standardless enough to invite arbitrary enforcement.").

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny the Motion in all respects.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____/s/_____

Michael J. Friedman
Assistant United States Attorney
NY Bar No. 4297461
555 4th Street, N.W., Room 11-439
Washington, D.C. 20530
202-252-6765
Michael.Friedman@usdoj.gov