UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**LEO BRENT BOZELL IV,**<br>also known as Zeeker Bozell,<br><br>**Defendant.** | **Case No. 21-CR-216 (JDB)** |

### MEMORANDUM OPINION & ORDER

Defendant Leo Bozell IV is charged via indictment with seven offenses related to the breach of the U.S. Capitol on January 6, 2021. Indictment [ECF No. 8]. Bozell has moved to dismiss portions of this indictment under Federal Rule of Criminal Procedure 12(b). See generally Def. Bozell's Mot. to Dismiss Counts One, Three and Four of the Indictment [ECF No. 33] ("Mot."). For the reasons explained below, and in accordance with this Court's decision in United States v. McHugh, Crim. A. No. 21-453 (JDB), 2022 WL 296304 (D.D.C. Feb. 1, 2022), the Court will deny Bozell's motion.

### Background

On January 6, 2021, pursuant to the Twelfth Amendment and the Electoral Count Act, 3 U.S.C. § 15, Congress convened in a joint session at the U.S. Capitol to certify the Electoral College's votes in the 2020 presidential election. Aff. in Supp. of Crim. Compl. [ECF No. 1-1] ¶ 5. The Capitol and exterior plaza were closed to the public, id. ¶ 4, and barricades and U.S. Capitol Police officers were present to keep crowds away, id. ¶ 6. Nevertheless, a large crowd gathered, and individuals began violently forcing their way into the Capitol to prevent Congress

1

from certifying the results of the election.  Id. ¶¶ 6–7; see also McHugh, 2022 WL 296304, *2 (further describing the violence and destruction on January 6).

The government alleges that Bozell participated in this riot.  Aff. in Supp. of Crim. Compl. ¶¶ 10–25.  According to the government, Bozell tore down scaffolding and helped break a window so that he and other rioters could break into the Capitol Building.  United States' Mem. in Opp'n to Mot. to Dismiss [ECF No. 35] ("Opp'n") at 2.  After climbing through that window, Bozell eventually entered the Senate Gallery, where he moved a camera so that it was unable to record rioters entering the Senate Floor.  Id.; Aff. in Supp. of Crim. Compl. ¶ 24.  Bozell left the Capitol Building after spending almost an hour inside.  Opp'n at 3.

Bozell's indictment charges him with the following offenses: obstruction of an official proceeding in violation of 18 U.S.C. § 1512(c)(2) (Count One); destruction of government property in violation of 18 U.S.C. § 1361 (Count Two); entering and remaining in a restricted building or grounds in violation of 18 U.S.C. § 1752(a)(1) (Count Three); disorderly and disruptive conduct in a restricted building and grounds in violation of 18 U.S.C. § 1752(a)(2) (Count Four); disorderly conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Five); engaging in an act of physical violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. § 5104(e)(2)(F) (Count Six); and parading, demonstrating, or picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Seven).  Indictment.  Bozell moved to dismiss counts one, three, and four—i.e., the charges under 18 U.S.C. § 1512 and § 1752.  See generally Mot.  The government filed its opposition, see generally Opp'n, and Bozell filed his reply, see generally Def. Bozell's Reply to Opp'n [ECF No. 36] ("Reply").  The motion is now fully briefed and ripe for this Court's decision.

**Legal Standards**

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) permits a criminal defendant to move to dismiss the indictment or a specific charge in the indictment against him for "failure to state an offense." An indictment fails to state an offense when "the statutory provision at issue does not apply to the charged conduct . . . or the statutory provision at issue is unconstitutional." McHugh, 2022 WL 296304, at *3. "When considering a motion to dismiss an indictment, a court assumes the truth of [the indictment's] factual allegations," United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015), and asks "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed," United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011). Because dismissing an indictment "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." Ballestas, 795 F.3d at 148 (quoting Whitehouse v. U.S. Dist. Ct. for Dist. R.I., 53 F.3d 1349, 1360 (1st Cir. 1995)).

**Analysis**

I.  **Count One: Obstruction of an Official Proceeding in Violation of 18 U.S.C. § 1512**

18 U.S.C. § 1512(c)(2) criminalizes "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." Bozell makes several arguments for dismissing the § 1512 charge against him. Mot. at 12–40. First, he argues that Congress's certification of the Electoral College's votes on January 6 (the "January 6 Certification") was not an official proceeding because it was unconstitutional, id. at 12–19, and not a proceeding "with a truth-seeking function carrying the threat of a penalty, i.e., administering justice," id. at 19–25. Bozell also claims that his conduct does not fit within § 1512(c)(2)'s prohibition because, under the ejusdem generis canon, § 1512(c)(2) prohibits only the destruction of records or evidence. Id. at 25–28.

3

Bozell then raises two void-for-vagueness challenges against the § 1512 charge: first, if § 1512(c)(2) does apply to interfering with Congress's certification of the Electoral College's votes, the statute does not give individuals fair notice of this prohibition, id. at 29–31, and second, § 1512(c)(2)'s use of "corruptly" is too vague to pass constitutional muster, id. at 31–34. Bozell also contends that the rule of lenity and novel construction principle prohibit prosecuting him under § 1512(c)(2). Id. at 35–37. His last argument is that applying § 1512(c)(2) to his alleged conduct on January 6 would violate the First Amendment. Id. at 37–40.

In accordance with this Court's opinion in McHugh, and the opinions in United States v. Grider, Crim A. No. 21-0022 (CKK), 2022 WL 392307 (D.D.C. Feb. 9, 2022); United States v. Reffitt, No. 21-cr-32 (DLF), Docket No. 81 (D.D.C. Dec. 29, 2021); United States v. Nordean, Crim. A. No. 21-175 (TJK), 2021 WL 6134595 (D.D.C. Dec. 28, 2021); United States v. Montgomery, Crim. A. No. 21-46 (RDM), 2021 WL 6134591 (D.D.C. Dec. 28, 2021); United States v. Mostofsky, Crim. A. No. 21-138 (JEB), 2021 WL 6049891 (D.D.C. Dec. 21, 2021); United States v. Caldwell, Case No. 21-cr-28 (APM); 2021 WL 6062718 (D.D.C. Dec. 20, 2021);[1] and United States v. Sandlin, No. 21-cr-88 (DLF), 2021 WL 5865006 (D.D.C. Dec. 10, 2021); the Court rejects Bozell's arguments for the reasons explained below.

    A.   The January 6 Certification Was an Official Proceeding

        i.  *Constitutional and Justiciability Arguments*

Bozell's first argument in support of his contention that the January 6 Certification was not an "official proceeding" is that the January 6 Certification, conducted pursuant to the procedures outlined in the Electoral Count Act and 3 U.S.C. §§ 15–18, was unconstitutional under the Twelfth

---

[1] In his reply brief, Bozell "acknowledge[d] that . . . several opinions have been issued in other January 6th cases rejecting many/all of" his arguments and "incorporate[d] the arguments made by Defendant Caldwell in his Motion for Reconsideration." Reply at 2. Judge Mehta recently denied that motion for reconsideration in United States v. Caldwell, Case No. 21-cr-28 (APM), 2022 WL 203456 (D.D.C. Jan. 24, 2022).

Amendment. Mot. at 12–16. Bozell also raises the related argument that determining "what are the procedures permissible to Congress in counting and certifying Electoral College votes under the Constitution and ECA" would require this Court to resolve a non-justiciable political question. Id. at 16–19. Neither of these claims has merit because the Court need not decide whether the January 6 Certification was constitutional to conclude that it was an official proceeding.

18 U.S.C. § 1515(a)(1)(B) defines the term "official proceeding" as used in § 1512 to mean "a proceeding before the Congress." Nothing about that definition's text suggests that a proceeding must be lawfully constituted to be official. Nor does the adjective "official" in § 1512(c)(2) imply that the proceeding must also be constitutional. The most relevant usage of "official" in Black's Law Dictionary—i.e., "official duties"—defines the word as "[o]f, relating to, or involving an office or position of trust or authority." Official, Black's Law Dictionary (11th ed. 2019). A proceeding can relate to or involve "an office or position of trust or authority" without being lawful. Id. A simple example illustrates the point. 18 U.S.C. § 1515(a)(1)(A) explains that an official proceeding can also mean "a proceeding before a judge or court of the United States." Suppose a federal court adjudicates a case on the sincere but mistaken belief it has jurisdiction. Under Bozell's theory, an individual who corruptly obstructs that case by altering the parties' submissions would not have violated § 1512(c)(2). Such an interpretation is both absurd and unsupported by the statute's text. The Court therefore agrees with Judge Friedrich that "[w]hether the [Electoral Count] Act is constitutional has no bearing on whether the congressional certification qualifies as an 'official proceeding' within the plain meaning of § 1515(a)'s definition." Sandlin, 2021 WL 5865006, at *4 n.3.

Because the Court concludes that it need not determine whether the Electoral Count Act is constitutional or whether the January 6 Certification conformed with the procedures outlined in

5

the Constitution and 3 U.S.C. § 15, the Court similarly rejects Bozell's argument that his § 1512(c)(2) charge raises a non-justiciable political question. As Judge Boasberg explained in Mostofsky, "determining that Congress's certification is an 'official proceeding' [does not] require the Court to wade into a political question . . . as this determination does not turn on whether the Electoral Count Act is constitutional or Congress's ability to set rules for the vote certification." 2021 WL 6049891, at *10; accord Nordean, 2021 WL 6134595, at *6 n.3.

      ii.  *Statutory Arguments*

Bozell next argues that the January 6 Certification was not an "official proceeding" because it was "not one with a truth-seeking function carrying the threat of a penalty, i.e., administering justice." Mot. at 19–25. Over the past few weeks, several judges in this District have rejected virtually identical claims. E.g., Nordean, 2021 WL 6134595, at *4–6; Montgomery, 2021 WL 6134591, at *4–10; Mostofsky, 2021 WL 6049891, at *9–11; Caldwell, 2021 WL 6062718, at *4–7; Sandlin, 2021 WL 5865006, at *3–5. These cases were thorough and discussed many of the authorities Bozell relies on in his motion. See, e.g., Mostofsky, 2021 WL 6049891, at *10 (discussing United States v. Kelley, 36 F.3d 1118 (D.C. Cir. 1994)); Caldwell, 2021 WL 6062718, at *6–7 (discussing Kelley, United States v. Ermoian, 752 F.3d 1165 (9th Cir. 2013), and the Department of Justice's Criminal Resource Manual).

More importantly, in McHugh, after carefully considering these cases, other relevant case law, § 1512(c)(2)'s text, and several dictionary definitions, this Court concluded that in order for a congressional event to constitute an "official proceeding" before the Congress, two elements must be present: formality and a second party that is integrally involved. 2022 WL 296304, at *4–8. The Court then applied that definition to the January 6 Certification and concluded that it was an "official proceeding" under § 1512(c)(2). Id. at *7–9. Nothing in Bozell's motion forces the

Court to reconsider those conclusions, and although the Court will not waste time repeating itself and further justifying its ruling in McHugh, there are two points particularly relevant to this case that are worth addressing.

First, while the Court does not agree with Bozell's argument that § 1512(c)(2)'s use of "official proceeding" refers only to ceremonies that involve adjudication or investigation, see Mot. at 20–23; see also McHugh, 2022 WL 296304, at *7–8 & n.10 (rejecting these arguments), the Court does agree with Bozell's suggestion that in order for an event to be an "official proceeding" before the Congress, the event must be both sufficiently formal and involve a second party, see Mot. at 20–21 (suggesting these elements are necessary); McHugh, 2022 WL 296304, at *6. As explained in McHugh, however, the January 6 Certification met those requirements. 2022 WL 296304, at *7 (noting that the January 6 Certification had "'the trappings of a formal hearing before an official body,' including 'a presiding officer, a process by which objections can be heard, debated, and ruled upon, and a decision—the certification of the results—that must be reached before the session can be adjourned'" and that the January 6 Certification "involve[d] a second entity as an integral component: the Electoral College.") (citation omitted).

Second, though other judges have thoroughly repudiated most of Bozell's contentions in support of his interpretation of § 1512, Bozell raises two arguments that, to this Court's knowledge, no judge has addressed. The first of these claims is that the use of "official proceeding" in § 1512(c)(2) must refer to a proceeding involving the administration of justice because a violation of § 1512 is sentenced under a section of the Sentencing Guidelines Manual entitled "Obstruction of Justice," Mot. at 24; see also U.S. Sent'g Guidelines Manual § 2J1.2 (U.S. Sent'g Comm'n 2013).[2] As the Supreme Court explained in Brotherhood of Railroad Trainmen v. Baltimore &

---

[2] The Court also notes that the broader subdivision of the Sentencing Guidelines Manual which § 2J1.2 falls within, Part J of Chapter Two, is entitled "Offenses Involving the Administration of Justice."

Ohio Railroad Co., 331 U.S. 519 (1947), a "wise rule" of statutory interpretation is "that the title of a statute and the heading of a section cannot limit the plain meaning of the text." Id. at 528–29. Adherence to that rule is particularly appropriate when, as here, the title in question relates to the statute being interpreted only indirectly, and the plain meaning of § 1512(c)(2)'s text is not limited to proceedings involving the administration of justice. Caldwell, 2021 WL 6062718, at *4–5; Sandlin, 2021 WL 5865006, at *7.

The second novel argument Bozell makes is that the January 6 rioters did not interrupt an "official proceeding" of Congress because shortly before the rioters entered the Capitol Building, the House of Representatives and Senate withdrew to separate chambers to discuss an objection to the certification of Arizona's electoral results. Mot. at 25; see also 167 Cong. Rec. H77 (daily ed. Jan. 6, 2021) ("The two Houses will withdraw from joint session [and] will deliberate separately on the pending objection and report its decision back to the joint session.") (statement of the Vice President). The Court easily rejects this contention. Despite the fact that the Senate and House of Representatives' deliberations occurred in separate chambers, both congressional houses were still engaged in the shared task of certifying the results of the 2020 presidential election at the time the January 6 rioters began their attack on the Capitol. See 3 U.S.C. § 15 (providing for the two congressional houses to withdraw to their chambers to consider objections when certifying presidential election results). As such, the January 6 rioters' interruption of the separate houses' deliberations obstructed, impeded, or influenced the January 6 Certification as a whole, see 167 Cong. Rec. H85–H87 (daily ed. Jan. 6, 2021) (demonstrating the January 6 riot's impact on the House of Representatives' deliberations), and the Court declines to hold that the portion of the January 6 Certification that the January 6 rioters interrupted did not constitute an official

proceeding of Congress simply because members of Congress may have been deliberating in separate rooms at the time the rioters committed their crimes.

In short, for many of the reasons previously explained in McHugh, the Court rejects Bozell's claim that the January 6 Certification was not an official proceeding under § 1512(c)(2). The meeting was both sufficiently formal and integrally involved the presence of a second entity— the Electoral College. The government is not also required to show that the proceeding involved an investigation or adjudication or that the congressional representatives were all in one room at the time the riot occurred.

### B. 18 U.S.C. § 1512(c)(2)'s Prohibition Is Not Limited to Acts Affecting Evidence

Bozell also argues that he cannot be convicted under § 1512(c)(2) because, under the canon of ejusdem generis, the statute prohibits only acts interfering with evidence or other tangible objects. Mot. at 25–28. Bozell derives this argument from the facts that § 1512(c)(1) prohibits interfering with "record[s], document[s], or other object[s]"; § 1512(c)(2) prohibits "otherwise obstruct[ing], influenc[ing], or imped[ing] any official proceeding"; and the canon of ejusdem generis counsels that when "general words follow specific words in a statutory enumeration, the general words are usually construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Montgomery, 2021 WL 6134591, at *14 (quoting Yates v. United States, 574 U.S. 528, 545 (2015)). Several judges have rejected this argument in similar January 6 cases, e.g., Nordean, 2021 WL 6134595, at *6–8; Montgomery, 2021 WL 6134591, at *10–18; Mostofsky, 2021 WL 6049891, at *11; Caldwell, 2021 WL 6062718, at *10– 20; Sandlin, 2021 WL 5865006, at *5–9; see also McHugh, 2022 WL 296304, at *4 n.5 (accepting and incorporating these holdings), and the Court rejects it here as well.

As other judges in this District have thoroughly explained, § 1512(c)(2)'s "language is plainly 'expansive' in scope." Nordean, 2021 WL 6134595, at *6 (quoting United States v. Burge, 711 F.3d 803, 809 (7th Cir. 2013)); accord Sandlin, 2021 WL 5865006, at *5. The statute's prohibition on "obstruct[ing], influenc[ing], or imped[ing] any official proceeding" contains no suggestion that it applies only to acts related to interfering with evidence. Cf. Caldwell, 2021 WL 6062718, at *14 ("[T]he natural reading of the two sections is that section 1512(c)(2) 'operates as a catch-all to cover otherwise obstructive behavior that might not constitute a more specific offense like document destruction.'") (quoting United States v. Volpendesto, 746 F.3d 273, 286 (7th Cir. 2014)). Additionally, § 1512(c)(2)'s use of the word "otherwise" indicates that it "was intended to target something different than (c)(1)—that is, conduct 'beyond simple document destruction.'" Nordean, 2021 WL 6134595, at *6 (quoting Burge, 711 F.3d at 809).

The statutory structure further supports the conclusion that § 1512(c)(2)'s prohibition is not limited to acts involving evidence or other documents. Section 1512(c)(1) focuses on the destruction of documents while § 1512(c)(2), the subsection Bozell is accused of violating, is separate and distinct.[3] Ejusdem generis' interpretive force is lessened when the words being interpreted are in different statutory subsections. See Montgomery, 2021 WL 6134591, at *14 ("Section 1512(c)(2) is not part of a list that starts in Section 1512(c)(1), and thus interpretive canons that are most helpful when construing a general term contained in a list that starts with specific terms are inapt."); accord Caldwell, 2021 WL 6062718, at *18. The Court therefore does not agree that § 1512(c)(2) applies only to acts impairing evidence.

---

[3] The fact that § 1512(c)(2)'s prohibition is in a different statutory subsection than § 1512(c)(1)'s prohibition distinguishes it from the statutes interpreted in Yates, 574 U.S. at 545–46 (using ejusdem generis to interpret 18 U.S.C. § 1519), and Begay v. United States, 553 U.S. 137, 142–43 (2008) (using ejusdem generis to interpret 18 U.S.C. § 924(e)(2)(B)(ii)), two cases Bozell heavily relies upon, see Mot. at 26–28; see also Caldwell, 2021 WL 6062718, at *13–19 (further distinguishing Yates and Begay).

10

### C. 18 U.S.C. § 1512(c) Is Not Unconstitutionally Vague

Bozell's next argument is that if § 1512(c)(2) is interpreted to apply to his alleged conduct, the statute is unconstitutionally vague. Mot. at 29–34. A law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." Johnson v. United States, 576 U.S. 591, 595 (2015). According to Bozell, there are two aspects of § 1512(c)(2) that fail this standard: "official proceeding" does not give fair notice that it includes proceedings unrelated to administering justice, Mot. at 29–31, and "corruptly" is standardless, id. at 31–34. Again, many other judges have rejected these arguments in other January 6 cases, e.g., Nordean, 2021 WL 6134595, *9–12; Montgomery, 2021 WL 6134591, at *18–23; Mostofsky, 2021 WL 6049891, at *11–12, and this Court recently rejected them in McHugh, 2022 WL 296304, at *9–13. In accordance with those decisions, the Court rejects Bozell's vagueness challenges here as well.

First, the term "official proceeding," as used in § 1512(c)(2) and further defined in § 1515(a)(1)(B), gives fair notice that it includes proceedings unrelated to administering justice. As Judge Mehta recognized in Caldwell, the January 6 Certification falls within the "'plain, obvious and common sense' meaning" of "official proceeding." 2021 WL 6062718, at *8 (quoting United States v. Bronstein, 849 F.3d 1101, 1108 (D.C. Cir. 2017)); see also Mostofsky, 2021 WL 6049891, at *11 ("[I]t is difficult to fathom that a reasonable person would not believe the Electoral College certification was an official proceeding, especially since the definition of that term includes 'a proceeding before Congress'; indeed, this is precisely the reason why the January 6 rioters wished to stop it."). Demonstrating that a statute is unconstitutionally vague requires

meeting a "stringent standard," McHugh, 2022 WL 296304, at *9 (quoting Sandlin, 2021 WL 5865006, at *10), which Bozell cannot do here given § 1512(c)(2)'s clear statutory text, id. at *12.[4]

Second, the term "corruptly," as used in § 1512(c)(2), is not so standardless that it invites arbitrary enforcement. In McHugh, this Court thoroughly discussed the opinions interpreting the word "corruptly"—including United States v. Poindexter, 951 F.2d 369 (D.C. Cir. 1991), an opinion Bozell heavily relies upon, see Mot. at 31–34—and concluded that the meaning of "corrupt" has been made sufficiently specific "through numerous, consistent interpretations by courts around the country," McHugh, 2022 WL 296304, at *11. In order for a defendant to be convicted of corruptly obstructing an official proceeding of Congress under § 1512(c)(2), the government must show that the defendant was conscious of his wrongdoing, id., and that the charged conduct had the "natural and probable effect of interfering with an official proceeding," id. (internal quotation marks omitted) (quoting Montgomery, 2021 WL 6134591, at *20). This understanding is consistent with the other opinions that have interpreted "corruptly" in § 1512(c)(2), e.g., Montgomery, 2021 WL 6134591, at *18–23; Caldwell, 2021 WL 6062718, at *8–11; Sandlin, 2021 WL 5865006, at *10–14, and "provides constitutionally sufficient warning

---

[4] As further discussed in the section on the novel construction principle, Bozell's § 1512(c)(2) charge is not constitutionally infirm simply because "§ 1512(c)(2) has never been used to prosecute a defendant for the obstruction of an 'official proceeding' unrelated to the administration of justice." Mot. at 29. "The fact that this case may be a first-of-its-kind prosecution does not render the term 'official proceeding' vague as applied. If that were the case, countless initial prosecutions under new criminal statutes would be constitutionally deficient." Caldwell, 2021 WL 6062718, at *8. Similarly, the Court is not swayed by Bozell's allegation that § 1512(c)(2) is unconstitutionally vague since some January 6 defendants have been charged with violating only separate misdemeanors. Mot. at 30–31. "[E]nforcement discretion 'does not render a statutory scheme unconstitutionally vague.'" McHugh, 2022 WL 296304, at *12 (quoting Kincaid v. Gov't of D.C., 854 F.3d 721, 729 (D.C. Cir. 2017)).

to potential defendants," McHugh, 2022 WL 296304, at *11. Bozell's vagueness challenges consequently fail.[5]

### D. Neither the Rule of Lenity nor the Novel Construction Principle Prohibit Prosecuting Bozell for Violating 18 U.S.C. § 1512(c)(2)

Bozell also argues that the rule of lenity requires the Court to dismiss the § 1512(c)(2) charge against him since "the government's interpretations are not unambiguously correct," Mot. at 35, and relatedly, the novel construction principle of the Due Process Clause requires dismissal "[b]ecause no court has construed § 1512(c)(2) as the government does in this case," id. at 35–37. Neither of these claims has merit.

The rule of lenity dictates that "ambiguity concerning the ambit of criminal statues should be resolved in favor of lenity." Cleveland v. United States, 531 U.S. 12, 25 (2000) (quoting Rewis v. United States, 401 U.S. 808, 812 (1971)). The rule of lenity applies only if, after employing the traditional tools of statutory interpretation, a "grievous ambiguity or uncertainty" remains in the statute. Montgomery, 2021 WL 6134591, at *23 (quoting Barber v. Thomas, 560 U.S. 474, 488 (2010)). "The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of [the rule of lenity,] for most statutes are ambiguous to some degree." Muscarello v. United States, 524 U.S. 125, 138 (1998). Put simply, there is no grievous ambiguity in § 1512(c)(2); although the statute's application to the January 6 riot has required judicial analysis,

---

[5] As an alternative to his vagueness argument, Bozell suggests that the only two constitutionally permissible definitions of "corrupt" are one, influencing another person to violate his legal duty—i.e., the "transitive" definition—or two, "acting with the intent to gain a material advantage for himself or an associate." Mot. at 32–34. The Court rejects Bozell's claim because the definition of "corrupt" that the Court outlined above is broader than what Bozell has proposed but still passes constitutional muster. See McHugh, 2022 WL 296304, at *11. Indeed, the Court already rejected the view that the transitive definition of "corrupt" is the only constitutionally permissible definition in McHugh, id. at *10, and while proving that a defendant "act[ed] with the intent to obtain an improper advantage for oneself or an associate" may be sufficient to show that the defendant acted corruptly, see Mot. at 33; see also United States v. Kelly, 147 F.3d 172, 177 (2d Cir. 1998) (listing a jury instruction with similar language), it does not follow that this showing is necessary, see Montgomery, 2021 WL 6134591, at *22 n.5 (suggesting, but declining to hold, that similar language could be an appropriate jury instruction in a January 6 case).

for the reasons explained above and in McHugh, this Court agrees with the many other judges that have concluded that applying the rule of lenity would be inappropriate here. E.g., Nordean, 2021 WL 6134595, at *12; Montgomery, 2021 WL 6134591, at *23; Mostofsky, 2021 WL 6049891, at *11; Caldwell, 2021 WL 6062718, at *21; Sandlin, 2021 WL 5865006, at *10.

Next, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." United States v. Lanier, 520 U.S. 259, 266 (1997); accord Bouie v. City of Columbia, 378 U.S. 347, 352 (1964) (noting that "unforeseeable and retroactive judicial expansion of narrow and precise statutory language" can deprive defendants of the "right of fair warning"). While "no court has interpreted Section 1512(c)(2) to include the precise allegations [in the January 6 cases,] that does not mean that this reading 'unexpectedly broadens' [the statute]." Nordean, 2021 WL 6134595, at *12 (quoting Bouie, 378 U.S. at 353); see also Lanier, 520 U.S. at 269–71 (rejecting the proposition that the Constitution requires the government to point to a "fundamentally similar" case before prosecuting an individual). As discussed above, § 1512(c)(2)'s "statutory text is plain, and that is enough to satisfy" both due process and the novel construction principle. Caldwell, 2021 WL 6062718, at *21. The Court thus joins the other judges who have refused to apply the novel construction principle to the January 6 cases. E.g., Nordean, 2021 WL 6134595, at *12–13; Mostofsky, 2021 WL 6049891, at *11; Caldwell, 2021 WL 6062718, at *21.

### E. Prosecuting Bozell for Violating 18 U.S.C. § 1512(c)(2) Does Not Violate the First Amendment

Bozell's last argument in support of dismissing the § 1512(c)(2) charge is that it is unconstitutional as applied to him because his "activities on January 6 included political expression, assembly and petitioning of the government for a redress of grievances." Mot. at 37–40. To prevail on this challenge, Bozell must show that § 1512(c)(2) "is unconstitutional as applied

14

to [his] particular expressive activity." Nordean, 2021 WL 6134595, at *13 (quoting United States v. Caputo, 201 F. Supp. 3d 65, 71 (D.D.C. 2016)).  As several other judges have recognized, however, "Section 1512(c)(2) targets only 'corrupt' acts of obstructing, influencing, or impeding an official proceeding. Therefore, it does not 'proscribe lawful or constitutionally protected speech.'" Caldwell, 2021 WL 6062718, at *22 (quoting United States v. Thompson, 76 F.3d 442, 452 (2d Cir. 1996)); accord Nordean, 2021 WL 6134595, at *13; Mostofsky, 2021 WL 6049891, at *12.  In short, Bozell is not being prosecuted for exercising his First Amendment rights to peacefully protest outside the Capitol, but rather on the belief that he corruptly used force to disrupt the January 6 Certification.  See Aff. in Supp. of Crim. Compl. ¶¶ 10–24 (alleging Bozell broke into the Senate Chamber and manipulated a camera so that the camera could not record the January 6 rioters); Opp'n at 2–3 (same).  The First Amendment does not protect such alleged actions,[6] and consequently, as with the rest of his challenges to the § 1512(c)(2) charge, Bozell's as-applied challenge under the First Amendment fails.

---

[6] And to the extent that any of Bozell's alleged crimes did constitute constitutionally protected expressive conduct, a proposition this Court strongly doubts, the Court concludes that Bozell's prosecution is still constitutional under United States v. O'Brien, 391 U.S. 367 (1968).  Under that case, a content-neutral statute like § 1512(c)(2) may be applied to regulate expressive conduct when "(1) 'it is within the constitutional power of the Government'; (2) 'it furthers an important or substantial government interest'; (3) 'the governmental interest is unrelated to the suppression of free expression'; (4) 'the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest,' . . . and (5) the regulation leaves open ample alternative channels for communication." Edwards v. Dist. of Columbia, 755 F.3d 996, 1002 (D.C. Cir. 2014) (quoting O'Brien, 391 U.S. at 377).  Bozell challenges only two of these elements: that the government's interest is unrelated to the suppression of free expression and that the restriction on Bozell's First Amendment freedoms is no greater than necessary to further the government's interest.  See Mot. at 39.  Again, however, Bozell is not being prosecuted for the political views he may have possessed and communicated on January 6, but rather for the destructive acts he allegedly took to disrupt the January 6 Certification.  The government's interest in preventing individuals from taking those disruptive acts to forcibly interrupt official proceedings of Congress is unrelated to the suppression of free expression, and Bozell's prosecution under § 1512(c)(2) is not a greater restriction of free speech than necessary to further that interest.  See Nordean, 2021 WL 6134595, at *14 (rejecting similar challenge under O'Brien); see also Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 298–99 (1984) (upholding regulation on sleeping in public parks under O'Brien test).

## II. Counts Three and Four: The Charges Under 18 U.S.C. § 1752

Bozell also moves to dismiss the counts charging him with unlawfully entering and remaining in a restricted building in violation of 18 U.S.C. § 1752(a)(1) (Count Three) and engaging in disruptive conduct in a restricted building in violation of 18 U.S.C. § 1752(a)(2) (Count Four) on the basis that the Capitol Police, and not the Secret Service, defended the Capitol on January 6. See Mot. at 40–45; Aff. in Supp. of Crim. Compl. ¶¶ 6–7. According to Bozell, only the Secret Service may determine what areas are restricted for § 1752's purposes, so the § 1752 charges must be dismissed. Mot. at 40–43. Alternatively, Bozell argues that § 1752 is unconstitutionally vague and both the rule of lenity and novel construction principle require the Court to accept his interpretation of § 1752. Id. at 43–45. None of these contentions has merit.

### A. The Capitol Police May Establish a Restricted Building or Grounds Under 18 U.S.C. § 1752

18 U.S.C. § 1752(a)(1) and (2) prohibit "knowingly enter[ing] or remain[ing] in any restricted building or grounds without lawful authority" and "engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds" when the defendant acts with the intent to impede government business and the defendant's actions do in fact impede government business. "The definition that applies here is" 18 U.S.C. § 1752(c)(1)(B), Opp'n at 26, which in turn defines "restricted buildings or grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will temporarily be visiting."[7] Bozell contends that the Secret Service "alone sets restricted areas" under § 1752. Mot. at 40. This Court previously rejected that argument in McHugh, 2022 WL 296304, at *18–20, and it does so here as well.

---

[7] The government alleges that Bozell entered a restricted area "where the Vice President and Vice President-elect were temporarily visiting." Indictment at 2–3. The Secret Service protects both these individuals. 18 U.S.C. § 3056(a)(1).

16

As the Court explained in McHugh, § 1752's text "offers no support for [Bozell]'s position" as the statute "criminalizes conduct on 'any posted, cordoned off, or otherwise restricted area,'" and "'says nothing about who must do the restricting.'" Id. at *18 (quoting United States v. Griffin, Case No. 21-cr-00092 (TNM), 2021 WL 2778557, at *4 (D.D.C. July 2, 2021)). And given § 1752's "straightforward statutory command, there is no reason to resort to legislative history." United States v. Gonzales, 520 U.S. 1, 6 (1997); accord Griffin, 2021 WL 2778557, at *4 & n.4 (declining to consider § 1752's legislative history to interpret the statute's meaning); contra Mot. at 42–43. But to the extent the Court looks beyond § 1752's plain text, the Court has already concluded that Bozell's proposed interpretation would "contravene the statute's manifest purpose: to ensure that federal law criminalizes (and thereby deters) misconduct that may threaten a Secret Service protectee." McHugh, 2022 WL 296304, at *19. Furthermore, contrary to Bozell's contentions, Mot. at 42, "there is nothing absurd about criminalizing the breach of any barrier around a Secret Service protectee," McHugh, 2022 WL 296304, at *20.

The Court is also not persuaded by Bozell's citations to United States v. Bursey, 416 F.3d 301 (4th Cir. 2005), and an opinion of the Office of Legal Counsel. Bursey affirmed a conviction under § 1752, 416 F.3d at 303–04, and though the Secret Service designated the restricted area in that case, id. at 308, it does not follow that only the Secret Service may designate restricted areas under § 1752. See Griffin, 2021 WL 2778557, at *5. Similarly, while the Office of Legal Counsel opinion that Bozell references discusses the Secret Service's authority to close streets pursuant to § 1752, see generally Auth. of the Sec'y of the Treasury to Order the Closing of Certain Streets Located Along the Perimeter of the White House, 19 Op. O.L.C. 109, 1995 WL 917148 (1995), the opinion does not discuss whether other federal law enforcement entities are prohibited from

designating restricted areas under § 1752. Thus, neither of these authorities support Bozell's position.

In sum, for the reasons explained in McHugh, and in accord with the opinions of other judges in this District, e.g., Nordean, 2021 WL 6134595, *18–19; Mostofsky, 2021 WL 6049891, at *12–13; Griffin, 2021 WL 2778557, at *2–7, the Court rejects Bozell's statutory interpretation argument under § 1752.

### B. Bozell's Remaining Arguments Are Unavailing

Bozell also cursorily argues that if his statutory interpretation argument is rejected, § 1752 is unconstitutionally vague and both the rule of lenity and novel construction principle require this Court to dismiss the § 1752 charges against him. Mot. at 43–45. These arguments mirror those Bozell has raised in support of dismissing his § 1512(c)(2) charge. See id. at 44–45 (claiming that the selective prosecution of January 6 defendants under § 1752 shows the statute's unconstitutional vagueness and that because "no court before January 6 ever construed Section 1752 to mean that agencies other than the [Secret Service] may set restricted areas under the statute, such construction would be" unconstitutional). And the Court rejects these claims for the same reasons it rejected the related arguments above: § 1752 "is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement." Nordean, 2021 WL 6134595, at *19; see also Griffin, 2021 WL 2778557, at *6 ("This law is no trap awaiting the unwary."). Likewise, prosecuting Bozell under § 1752 does not unexpectedly broaden the statute. See Nordean, 2021 WL 6134595, at *19. The government alleges that Capitol Police and barricades were present and visible outside the Capitol Building, yet Bozell forced his way in regardless. Aff. in Supp. of Crim. Compl. ¶¶ 6–7, 15–24; Opp'n at 2–3. Those charges, if proven, would clearly constitute violations of § 1752

18

under the statute's plain text. Hence, the § 1752 charges, along with Bozell's § 1512(c)(2) charge, may proceed to trial.

Accordingly, for the foregoing reasons, it is hereby

**ORDERED** that [33] Bozell's motion to dismiss is hereby **DENIED.**

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: February 16, 2022