UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>LEO BRENT BOZELL IV,<br>also known as Zeeker Bozell,<br><br>Defendant. | Crim. Action No. 21-216 (JDB) |

**ORDER**

Defendant Leo Brent Bozell IV is charged via indictment with ten offenses related to the breach of the U.S. Capitol on January 6, 2021. In advance of trial, which is set to begin on September 6, 2023, both Bozell and the government have filed motions in limine. For the reasons explained below, the Court will deny without prejudice Bozell's motion in limine and will grant in part and deny in part the government's motion in limine.

**Legal Standard**

"The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses." United States v. Whitmore, 359 F.3d 609, 615–16 (D.C. Cir. 2004). To be admissible, evidence must be relevant—that is, it must have a tendency to make a fact of consequence more or less probable, see Fed. R. Evid. 401, 402—and even relevant evidence may be excluded if its "probative value is substantially outweighed by a danger of," among other things, "unfair prejudice, confusing the issues, [or] misleading the jury," Fed. R. Evid. 403. A district court may also properly exclude evidence of a "highly sensitive nature," particularly when it is not within the scope of direct examination or does not "pertain to the charges in [the] case." United States v. Balistrieri, 779 F.2d

1


1191, 1216–17 (7th Cir. 1985), overruled on other grounds by Fowler v. Butts, 829 F.3d 788 (7th Cir. 2016).

## Analysis

I. **Bozell's Motion to Preclude Witness Narration of Video and Documentary Evidence**

Bozell asks the Court to "preclude[e] any government witness without personal knowledge from offering testimony in the form of a narration of events depicted on any video footage or documents offered into evidence during either the Government's case-in-chief or rebuttal case." Def. Leo Bozell's Mot. in Lim. No. 1—Witness Narration of Video & Documentary Evid. [ECF No. 52] ("Bozell Mot.") at 2. He argues that

> [i]f an individual is not properly qualified as an expert, did not witness the depicted events while present at the scene of the crime, and lacks greater ability to understand items of evidence than does the jury, such person is not competent to testify to the meaning or significance of such evidence.

Id. (citing United States v. Shabazz, 564 F.3d 280, 287 (3d Cir. 2009)). Although it is not entirely clear what the legal basis is for this motion, it seems that Bozell relies on Federal Rule of Evidence 701, which governs opinion testimony by lay witnesses. See id. at 4.

The government opposes the motion. See United States' Opp'n to Bozell Mot. [ECF No. 53] ("Gov't Opp'n"). It argues that "narrating video" and "reading documents aloud" at trial are "common and permitted" practices and that neither practice is precluded by the Federal Rules of Evidence. See id.

A. **Narration of Video Footage**

Federal Rule of Evidence 701 provides that a lay witness's "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Witness narration of video footage of which the witness has personal, firsthand knowledge is clearly permitted by Federal Rule of Evidence 602 and is not at issue here.[1] At issue here is witness narration of video footage of events at which the witness was <u>not</u> present and thus did <u>not</u> experience firsthand. As the government notes, "in virtually every Capitol riot case . . . the government may play videos of the events of that day." Gov't Opp'n at 1. "At trial, the government may ask witnesses to describe the action in these videos . . . for several reasons." <u>Id.</u> at 1–2. Those reasons include "confirm[ing] a given video's authenticity, explain[ing] where and when the events recorded occur[red], and identify[ing] other rioters or officers, as well as guideposts and objects." <u>Id.</u> at 2. Law enforcement witnesses "can explain what officers or rioters in a given video are doing" and investigator witnesses "can explain who the defendant is, where he is in a given video, and what he appears to be doing" based on the witness's personal experience, expertise, and perception. <u>Id.</u>

Judges in other January 6 cases, including this judge, have routinely permitted such narration by witnesses who were not present for the particular events recorded. <u>E.g.</u>, Order at 1–2, <u>United States v. McCaughey, III</u>, Crim. A. No. 21-40 (TNM) (D.D.C. July 20, 2022), ECF No. 389 (denying a motion identical to Bozell's). And for good reason. Such witness narration complies with Rule 701 because it is rationally based on the witness's perception of the video and is certainly helpful "as it provides necessary context." Gov't Opp'n at 2. Without such narration, "[t]he trier-of-fact would be expected to pick the defendant out of the crowd, or identify a relevant sequence of facts occurring, at a particular timeframe without guidance." <u>Id.</u> As the government notes, and the Court agrees, that would be "absurd." <u>Id.</u>

---

[1] Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

3

Numerous courts of appeals have permitted such witness narration. The Ninth Circuit held that "an officer who has extensively reviewed a video may offer a narration, pointing out particulars that a casual observer might not see." United States v. Torralba-Mendia, 784 F.3d 652, 659 (9th Cir. 2015). Specifically, it held that a law enforcement witness's narration of a video for which he was not present was permissible under Rule 701 because his "narratives were based on his repeated viewing of the recordings[] and helped the jury understand the import of the videos." Id. at 660. The Ninth Circuit also held the same in United States v. Begay, 42 F.3d 486 (9th Cir. 1994). In that case, like the present one, the officer narrated a video of a riot that included the defendants. See id. at 503. The court reasoned that

> [a]lthough the jury viewed [the video] in its entirety, it is reasonable to assume that one viewing a videotape of a demonstration involving over 200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously. [The law enforcement witness] spent over 100 hours viewing [the video]. To have the jury do likewise would be an extremely inefficient use of the jury's and the court's time. Therefore, [the witness's] testimony concerning which persons were engaged in what conduct at any given moment could help the jury discern correctly and efficiently the events depicted in the videotape.

Id. The Fifth and Seventh Circuits have taken similar approaches. See United States v. El-Mezain, 664 F.3d 467, 513 (5th Cir. 2011) (holding testimony by agent witnesses outside of their personal knowledge was permissible lay opinion testimony "because the agents' opinions were limited to their personal perceptions from their investigation of this case" and "provided the jury with relevant factual information about the investigation"); United States v. Rollins, 544 F.3d 820, 830–32 (7th Cir. 2008) (affirming a district court's admission of lay opinion testimony by an agent "as to his 'impressions' of intercepted telephone conversations" because the "testimony was rationally based on his first-hand perception of the intercepted phone calls . . . as well as his personal, extensive experience with this particular drug investigation" and "assisted the jury in understanding . . . what the parties to the conversations said and what they meant").

4

Accordingly, the Court will deny Bozell's motion to preclude such witness narration of video footage, but it will permit Bozell to raise more tailored evidentiary objections to specific narration at trial.

### B. Reading Documents Aloud

Bozell also asks the Court to preclude government witnesses from "reading aloud the text of documentary exhibits about which they have no first-hand knowledge." Bozell Mot. at 5. He argues that "[r]eading the exhibit aloud does not assist the jury in understanding the exhibit" and "is irrelevant under Rule 401." Id. The government disagrees, contending that "[a]n appropriate witness, such as the investigating agent, should be permitted to read sections of such documents aloud to explain the documents' significance and provide necessary context, instead of leaving the finder-of-fact to guess for himself." Gov't Opp'n at 7.

The Court agrees with the government. It is extremely common for witnesses to read documents aloud once a foundation for that witness's knowledge has been established and that evidence has been admitted. Having the witness read it aloud is a form of publishing the evidence that is helpful to the finder-of-fact and aids in its understanding—otherwise, one would have to read the document during trial, impeding the flow of witness examination and risking miscomprehension of its contents. Moreover, to the extent a government witness provides helpful context to certain terminology used in documents based on his experience with the investigation, that is also permissible narration. See El-Mezain, 664 F.3d at 513; Rollins, 544 F.3d at 830–32. The Court will accordingly deny Bozell's motion to preclude government witnesses from reading documents aloud, but it will again permit Bozell to raise more tailored evidentiary objections to specific narration at trial. Moreover, the Court cautions both sides to refrain from unnecessary, redundant, or lengthy reading of documents during trial.

## II. The Government's Motion to Preclude Improper Defense Arguments and Evidence

The government's motion in limine asks the Court to preclude Bozell from "introducing evidence or making arguments"

> (1) On the specific location of security cameras in the U.S. Capitol;
> (2) On specific Secret Service tactics and emergency operations;
> (3) That his conduct was authorized by former President Trump or other officers or officials;
> (4) That any inaction by law enforcement permitted his conduct;
> (5) That the First Amendment permitted his conduct;
> (6) On any matter that encourages jury nullification;
> (7) That he defended himself or others on January 6, 2021; and
> (8) On his prior good acts or relative culpability to other actors on January 6, 2021.

United States' Mot. in Lim. to Preclude Improper Defense Args. & Evid. [ECF No. 51] ("Gov't Mot.") at 1. Bozell did not file an opposition to the motion, so the Court will consider the motion unopposed.

### A. Security-Related Requests

#### i. U.S. Capitol Police Surveillance Cameras

The government asks the Court "to restrict the defendant's presentation of evidence regarding the specific position of U.S. Capitol Police surveillance cameras," specifically requesting that "[e]vidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded in light of the ongoing security needs of the Capitol." Gov't Mot. at 3–4. This Court and many others have already considered and granted this motion in other January 6 cases. See, e.g., Min. Entry, United States v. Padilla, Crim. A. No. 21-214 (JDB) (D.D.C. Apr. 6, 2023) (taking the same approach to a similar motion); Order at 8, United States v. Sheppard, Crim. A. No. 21-203 (JDB) (D.D.C. Jan. 6, 2023), ECF No. 66 ("Sheppard Order") (same); Min. Order, United States v. Williams, Crim. A. No. 21-377 (BAH) (D.D.C. June 8, 2022) (same).

6

As in those cases, the Court struggles to see the relevance of specific locations of security cameras when the video evidence itself should make clear what falls within the field of view of any given camera. Accordingly, such evidence is inadmissible as irrelevant under Federal Rule of Evidence 401. Alternatively, given the government's interest in the security of the Capitol, the Court finds that such evidence should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the risk of wasting time or distracting from relevant issues.

> ii. Cross-Examination of Secret Service Witnesses

The government also asks the Court to "limit[] the cross-examination of the Secret Service witnesses to questioning about the function performed by the Secret Service as testified to on direct exam, in this case protecting the Vice President and his family." Gov't Mot. at 6. Specifically, it requests that Bozell be "foreclosed from questioning the witnesses about the following": (1) "Secret Service protocols related to the locations where protectees or their motorcades are taken at the Capitol or other government buildings when emergencies occur," and (2) "[d]etails about the nature of Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees." Id. at 6–7.

The overwhelming majority of judges in this District that have considered this same motion, including this judge, have granted it. See, e.g., Order at 2–4, United States v. Lesperance, Crim. A. No. 21-575 (JDB) (D.D.C. July 5, 2023), ECF No. 86 ("Lesperance Order"); United States v. Chwiesiuk, Crim A. No. 21-0536 (CKK), 2023 WL 3002493, at *7–8 (D.D.C. Apr. 19, 2023); Min. Order, United States v. Oliveras, Crim. A. No. 21-738 (BAH) (D.D.C. Jan. 17, 2023); Sheppard Order at 7–9; Omnibus Order at 3, Min. Order, United States v. Williams, Crim. A. No. 21-618 (ABJ) (D.D.C. Nov. 1, 2022); Order at 2–4; United v. Rhodes, III, Crim. A. No. 22-15

(APM) (D.D.C. Sept. 6, 2022), ECF No. 288.  The Court sees no reason to deviate from these previous decisions.

Under Federal Rule of Evidence 611(b), cross-examination should generally not go beyond the scope of direct examination and matters affecting the witness's credibility.  Here, cross-examination on the two topics the government seeks to exclude is irrelevant to the main issues in this trial and implicates sensitive matters of national security.  Accordingly, the Court will grant the government's motion and preclude cross-examination about the Secret Service's general emergency protocols and specific logistical information regarding its protective details as irrelevant under Rule 401 or, alternatively, because the low probative value of any such testimony is substantially outweighed by the risk of wasting resources and distracting from relevant issues under Rule 403, particularly in light of the government's reasonable interest in protecting sensitive national security information.

### B. Requests to Preclude Certain Defenses

#### i. Entrapment-by-Estoppel or Public Authority Defense

The government asks the Court "to prohibit the defendant from making arguments or introducing irrelevant evidence that former President Trump or other officials gave the defendant permission to attack the U.S. Capitol, in what are commonly known as 'entrapment-by-estoppel' or 'public authority' defenses."  Gov't Mot. at 8.

The entrapment-by-estoppel and public authority defenses are "closely related." United States v. Sheppard, Crim. A. No. 21-203 (JDB), 2022 WL 17978837, at *7 (D.D.C. Dec. 28, 2022). To mount either defense, Bozell would need to offer "sufficient evidence from which a reasonable jury could find," inter alia, that he "actually relied on" specific statements by an official and that those statements "amount[ed] to an express or implied statement of the law." Id. at *8 (internal

8

quotation marks omitted); id. at *9 ("[An] entrapment-by-estoppel defense[] [is] available only when the official's statements or conduct state or clearly imply that the defendant's actions are lawful.").

This Court and others in this District have routinely granted requests to preclude an entrapment-by-estoppel or public authority defense based on a January 6 defendant's alleged reliance on statements made by then-President Trump at his rally on January 6, 2021. See, e.g., Order at 9–10, United States v. Neely, Crim. A. No. 21- 642 (JDB) (D.D.C. Apr. 18, 2023), ECF No. 80 ("Neely Order"); Sheppard, 2022 WL 17978837, at *7–9; United States v. Grider, Crim. A. No. 21-022 (CKK), 2022 WL 3030974, at *2–4 (D.D.C. Aug. 1, 2022); Lesperance Order at 7–9; cf. United States v. Chrestman, 525 F. Supp. 3d 14, 29–33 (D.D.C. 2021) (holding in the context of pretrial detention that "[t]he evident limitations on the entrapment by estoppel defense make highly unlikely that this defense will prevail or be 'viable' and therefore does little to outweigh the overwhelming evidence against defendant proffered by the government"). Courts have held the same with respect to statements made by other law enforcement officials at the Capitol on January 6. See, e.g., Lesperance Order at 8–9; Mem. & Order at 2, United States v. Williams, Crim A. No. 21-377 (BAH) (D.D.C. June 8, 2022), ECF No. 87 ("Williams Order") (reasoning that prior Trump-specific decisions "appl[y] with equal force" to entrapment-by-estoppel defenses related "to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building").

Bozell did not respond to the government's motion at all, let alone argue why he may be entitled to raise an entrapment-by-estoppel or public authority defense. Accordingly, the Court will grant the government's request to preclude him from arguing an entrapment-by-estoppel or public authority defense.

### ii. Inaction by Law Enforcement

The government further asks that "the Court . . . bar the defendant from arguing that any failure of law enforcement to act rendered the defendant's conduct legal." Gov't Mot. at 12. This Court and others in this District have previously granted similar motions because "[s]ettled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." Neely Order at 10 (quoting Williams Order at 3)); see Lesperance Order at 6–7; see also Cox v. Louisiana, 379 U.S. 559, 569 (1965). Accordingly, the Court will reaffirm its prior approach and grant the government's request to preclude argument that law enforcement inaction rendered defendants' conduct lawful.

Similarly, in other cases the Court has excluded as irrelevant evidence of law enforcement inaction that defendants themselves did not perceive or of which they were not aware: "[a]s a logical matter, . . . any action or inaction of which defendant[s] w[ere] not aware cannot possibly have had any effect on [their] state-of-mind and is inadmissible as irrelevant under Federal Rule of Evidence 401." Neely Order at 10 (quoting Williams Order at 3–4); accord Lesperance Order at 7. The Court stands by its prior approach and will grant the government's request as to such evidence.

However, evidence of law enforcement inaction, if perceived by defendant, may be relevant to the mens rea element of some of the charges against him. The Court therefore will not bar the use of such evidence insofar as it is relevant to Bozell's intent; this ruling only bars the use of such evidence to argue that defendant's conduct was de facto legal.

### iii. First Amendment Defense

The government next seeks "to preclude the defendant from arguing or eliciting evidence that there was a First Amendment right to protest inside the restricted area around the Capitol that

10

day." Gov't Mot. at 13. The Court will grant this unopposed request because "[t]here is no First Amendment right to protest in a restricted area," and the government "restrict[ed] an area that is a traditional public forum for legitimate government ends" on January 6, 2021. Id.; accord Sheppard Order at 9–10.

      iv.    Defense of Self or Others

The government next moves to prevent Bozell from arguing self-defense or defense of others. Gov't Mot. at 16–17. Because Bozell has not indicated that he intends to raise such a defense, the Court concludes that this motion is premature and will accordingly deny it without prejudice. If Bozell indicates he intends to raise such a defense, the government may renew its motion and the Court will resolve it at that time.

**C. Other Requests**

      i.    Jury Nullification

The government asks the Court to prohibit Bozell "from arguing or introducing evidence that encourages jury nullification, whether during voir dire or at trial." Gov't Mot. at 14. It specifically argues that discussion of selective prosecution and "the hardships of prison or the potential effect of incarceration on his family or employment prospects" is inappropriate. Id. at 15–16. While the Court agrees that neither of these matters are relevant to this trial, as the Court noted previously in Sheppard,

> [b]oth parties are aware of the relevant rules and if there are challenges to specific statements, they may be raised at trial. A broad ruling requiring the parties to follow the rules of evidence is unnecessary, and without the context of the trial and the statements to be introduced, it is premature to rule on any of these motions at this time.

Sheppard Order at 11–12. Accordingly, the Court will deny this request as premature, without prejudice. If the defense raises an irrelevant line of argument related to selective prosecution or

11

otherwise encourages jury nullification at trial or during voir dire, then the government may object, and the Court will make a ruling at that time.[2]

        ii.      <u>Prior Good Acts and Relative Culpability</u>

Last, the government asks the Court to "preclude any argument that the defendant's lack of additional criminal actions on January 6, 2021 or allegedly helpful acts negate his criminal conduct for which he is charged." Gov't Mot. at 17. The Court is unwilling at this time to make a blanket ruling about the relevance of any potential evidence of Bozell's "lack of criminal actions" or "alleged helpful acts" on January 6. Assessing the relevance of such evidence depends on the particular piece of evidence at issue and is an inherently fact- and context-specific determination. Some of the evidence the government seeks to preclude could be circumstantial evidence of Bozell's state of mind at the Capitol on January 6, and many of the charges against Bozell contain a mens rea element requiring him to have possessed a specific intent. And even any Rule 403 balancing assessment of probative value and prejudicial effect of such evidence cannot be done without reference to the specific piece of evidence at issue and its context. Thus, the Court will deny this motion as premature, without prejudice. The government may renew its motion as to specific pieces of evidence at trial.

\*      \*      \*

For the foregoing reasons, and upon consideration of the entire record herein, it is hereby

**ORDERED** that [52] defendant's motion in limine to preclude witness narration of video and documentary evidence is **DENIED**; and it is further

**ORDERED** that [51] the government's motion in limine is **GRANTED** in part and **DENIED** in part as follows:

---

[2] Bozell has now waived his right to a jury trial, <u>see</u> Waiver of Trial by Jury [ECF No. 61], and the case will go forward as a bench trial. This issue may therefore now be moot.

12

- The request to restrict defendant's presentation of evidence regarding the specific position of U.S. Capitol Police surveillance cameras is **GRANTED**;

- The request to preclude testimony on specific Secret Service tactics and emergency operations is **GRANTED**;

- The request to preclude defendant from mounting an entrapment-by-estoppel or public authority defense is **GRANTED**;

- The request to preclude defendant from arguing that law enforcement inaction made his conduct on January 6 legal is **GRANTED**;

- The request to preclude defendant from arguing that his conduct was protected by the First Amendment is **GRANTED**;

- The request to preclude defendant from arguing in a manner that encourages jury nullification is **DENIED** as premature without prejudice;

- The request to preclude defendant from arguing self-defense or defense of others is **DENIED** as premature without prejudice; and

- The request to preclude defendant from introducing evidence of his good conduct or culpability relative to others on January 6 is **DENIED** as premature without prejudice.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: August 17, 2023