**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 21-CR-216 (JDB)** |
| | : | |
| LEO BRENT BOZELL IV, | : | |
| | : | |
| Defendant. | : | |

<u>**UNITED STATES' TRIAL BRIEF**</u>

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence to be presented at trial.

As described below, the government will introduce a variety of evidence including, but not limited to, video evidence, testimony from law enforcement witnesses, and evidence collected from the electronic device of the defendant. To streamline its presentation for this bench trial and focus on the matters in dispute, the parties have agreed in principle to certain stipulations, including stipulated testimony. The parties have also cooperatively endeavored to reach agreements on evidentiary issues regarding exhibits.

**I.     The January 6 Capitol Riot And The Defendant's Actions**

On January 6, 2021, thousands of people descended on the U.S. Capitol and interrupted the joint session of Congress that had convened to certify the votes of the Electoral College for the 2020 Presidential Election. The government's evidence will briefly set the stage for the joint session and the riot in which the defendant participated, and then focus on the defendant's criminal conduct and intent that day.

As the Court is aware, on January 6, 2021, Vice President Michael Pence, as the President of the Senate, was present at the Capitol to preside over the joint session and Senate proceedings.

On that day, the Secret Service was present for the protection of the Vice President and his family members, and physical barriers and law enforcement officers surrounded the U.S. Capitol building and grounds. At all relevant times, the United States Capitol building and its grounds were closed to members of the public.

The defendant, Leo Brent Bozell IV, was a key participant in the breach of the Capitol on January 6 and the resultant halting of the Congressional Proceedings. Prior to January 6, the defendant helped to plan and coordinate events in Washington, D.C. in support of the former president's "Stop the Steal" movement. On January 6 itself, the defendant was involved in numerous pivotal moments that allowed rioters to overtake police lines, breach the building, and halt the election's certification.

After making his way to the Capitol Grounds before 2:00 p.m. and witnessing violence against police officers, the defendant joined as the mob first broke through the police line to access the northwest stairs under the scaffolding that was in place for the construction of the inaugural stage. Once at the top of the staircase and at the head of the rioters, the defendant tore through a large tarp that confined rioters inside the staircase, and then climbed through the tarp to access the landing on the stairs. He waved rioters up towards the Capitol and encouraged them to join the breach. He was at the front of the rioters who overran the police line and gained first access to the Upper West Terrace. He smashed the windowpane on the Senate Wing Door (the first breach of the Capitol building) and then smashed the window next to the Senate Wing Door (the entry point for hundreds of rioters). He roamed the building for nearly an hour – making his way into more than a dozen different areas of the building. He helped push open the Rotunda Doors, which became a major access point into the building. He checked the door handles of numerous office

doors, and entered two private rooms – one being the Speaker of the House, Nancy Pelosi's office. He was part of the small group of rioters who overtook officers locking the Senate Gallery and as a result allowed rioters to access to the Senate Chamber. He moved one of the CSPAN cameras in the Senate Chamber to obstruct the recording of the rioters and directed another rioter to do the same. He entered the Senate Floor, where rioters rustled through Senators' and the Vice President's belongings and effects. He joined a group of rioters who resisted officers' attempts to corral them out of the Senate Carriage Doors, and instead stormed past those officers. Ultimately, the defendant passed through at least seven police lines and left the Capitol building only after police escorted him out. The government's evidence, as summarized below, will demonstrate that Leo Bozell was a major contributor to the chaos, the destruction, and the obstruction at the Capitol on January 6, 2021.

The defendant traveled to Washington, D.C. from Palmyra, Pennsylvania to attend the former president's "Stop the Steal" rally. The defendant wore several unique items of clothing that make him quickly visible in video footage and photographs. He wore a navy blue hooded sweatshirt with "Hershey Christian Academy" in white letters in a circular pattern with a cross in the center; a red, white, and blue neck gator; a red and white baseball cap with a blue brim; multicolored reflective sunglasses on his face or on his baseball cap; black gloves at times; and dark pants.



*Govt Exs. 221 (left) and 222 (right): photographs of Bozell on January 6, 2021 at the U.S. Capitol*

After the "Stop the Steal" rally, the defendant marched with the crowd towards the U.S. Capitol. He entered Capitol grounds before 2:00 p.m., made his way past the barriers, and approached the Northwest Stairs where he witnessed violence against officers. A line of officers guarded access to the Northwest Stairs ("line 1") and a second line formed at the midpoint of the stairs to defend against rioters climbing the stairs and handrail ("line 2").



*Bozell stood at the "X" (Govt Exs. 400-402) and points "1" and "2" indicate police lines*

The defendant watched as rioters confronted the officer lines and chanted, "WHOSE HOUSE? OUR HOUSE!" Ex 455 at :29. He used a bike rack barrier as a ladder to climb partway up a wall and hand items, including a long white pole, to rioters on the Northwest Stairs.



*Govt Ex. 408 showing Bozell (yellow circle) passing a large and long white pole to rioters (left) and carrying an object (right) as he climbed up a bike rack repurposed by rioters as a ladder*

The rioters surged forward and overran officer "line 1" at the bottom of the staircase under the scaffolding. Govt Ex. 423. About halfway up the stairs, the rioters were slowed down by a construction wall and another line of officers underneath the scaffolding – "line 3." As rioters chanted "FIGHT FOR TRUMP," Bozell climbed around the wall.



*Govt Ex. 424.2, left, showing wall obstructing rioters, and Govt Ex. 424.7, right, showing Bozell (yellow circle) climbing around the wall*

Rioters threw objects and sprayed chemical irritant at the officer line. The vastly outnumbered officers retreated up the stairs and fell back from the encroaching mob. Once the

5

mob reached the top of the stairs under the scaffolding, they were again stopped – this time by a bike rack wall, a line of officers, and the large white tarp that wrapped the construction scaffolding ("line 4"). At the top of the stairs, Bozell attempted to rip the tarp off the scaffolding, which would have broadened the rioters' access to the staircase.

 

*Govt Ex. 423 showing Bozell (yellow circle) tearing the tarp under the scaffolding*

Bozell eventually successfully ripped through the tarp and crawled through it, gaining access to the landing of the Northwest Stairs, and confronting officer line 2.



*Govt Ex. 443 showing Bozell (yellow circle) under the construction scaffolding tearing through the tarp as other rioters spray chemical irritant at the officer line*



*Govt Ex. 117 showing Bozell (yellow arrow) climbing through tarp onto the landing platform on the Northwest Stairs*

Bozell leaned his body over the railing and waved for rioters to ascend the stairs. He then faced off with an officer and appeared to yell at the officer line.



*Govt Ex. 117 showing Bozell (left, yellow circle) waving rioters up the stairs and (right, yellow arrow) facing off with USCP Officers*

The aggression heightened. Rioters threw objects at the officers, like a traffic cone, metal objects, and a pole. With Bozell still face-to-face with the officer line, one rioter coordinated the crowd by yelling, "ARE YOU READY TO PUSH? LET'S PUSH! . . . PUSH!" At that, the rioters – Bozell at front – barreled through the police line. To avoid getting trampled, the officers turned

7

and retreated up the stairs.



*Govt Exs. 117, 1001 showing Bozell (red arrow) barreling through the police line to gain access to stairway*

At the top of the stairs, another officer line – "line 5" – formed a line behind bike racks.

The momentum of the rioters quickly overtook line 5.



*Govt Ex. 407 showing Bozell ascend the NW Stairs towards a line of bike racks and a line of officers*

The mob surged forward toward the Capitol. Bozell darted towards the Senate Wing Door but stopped along the way to pick up something out of the grass.



*Govt Ex. 410 showing Bozell picking up an object out of the grass en route to the Senate Wing Door*

Bozell rushed to the Senate Wing Door and began bashing the windowpane with what appeared to be a rock; he struck the windowpane ten times.



*Govt Exs. 412 and 1007 showing Bozell (yellow circle, left) bashing the windowpane of the Senate Wing Door with an object and walking away, revealing the damage (red arrow, right)*

Bozell moved a couple feet over to the window directly north of the Senate Wing Door, and bashed that window eleven times until glass shattered, littering the floor.

9



*Govt Exs. 100, 1008 showing Bozell (red circle, left) walking to the window and bashing it until glass shattered into the building (right)*

Other rioters succeeded in pushing the last of the glass out of the window that Bozell had smashed, creating a pivotal access point into the Capitol Building. As Bozell smashed the window, one officer responded to the area just as a long piece of wood was launched into the building. The officer quickly retreated to warn officers and lawmakers inside the building that it had been breached.

At 2:13 p.m., Bozell climbed through the window that he smashed, and he celebrated.



*Govt Ex. 100 showing Bozell (yellow circle) climbing through the window after he smashed it*



*Govt Ex. 220 showing Bozell yelling once he made it inside the Capitol building*

Bozell marched towards the Senate Wing as nearby Senate staffers hurried away from the

mob.



*Govt Ex. 426 showing Bozell (yellow circle) marching down hallway in the Capitol building and video recording on his phone, and later showing staffers rushing to safety*

At that time, U.S. Capitol Police ("USCP") Officer Eugene Goodman sprinted to respond to the breach. The mob, Bozell included, chased Officer Goodman up a staircase. Heroically, Officer Goodman led the rioters into the Ohio Clock Corridor where a line of officers awaited.





*Govt Exs. 427, 428 showing Bozell (yellow rectangle, top) ascending the stairs with the mob
chasing Officer Eugene Goodman, and then confronting a line of officers
in the Ohio Clock Corridor (yellow circle, bottom)*

While rioters faced off with a line of officers in the Ohio Clock Corridor, Bozell separated from the group and made his way down a hall. As Bozell wandered the Capitol freely in the Senate Wing, the Vice President and lawmakers remained nearby in the Senate Chamber and adjoining room.

Bozell entered the Mansfield Room, which is generally used as a meeting place for Senators. Around that time, two USCP Officers checking rooms for staffers in hiding discovered Bozell in the Mansfield Room. The officers escorted Bozell out, and he rejoined the rioters in the Ohio Clock Corridor.



*Govt Ex. 112: Bozell walking down hallway and entering doors to his right,
where officers eventually found him and escorted him out*

13

Bozell left the Ohio Clock Corridor and resumed checking door handles. He attempted to open the office door of the Senate Majority Leader, but it was locked.



*Govt Ex. 126 showing Bozell (yellow rectangle) attempting to open the door of the Senate Majority Leader's Office*

Bozell eventually descended to the first floor of the Capitol near the Senate Carriage Door. There, officers were attempting to corral rioters out of the building as rioters actively fought back.

 

*Govt Ex. 103 showing Bozell (yellow arrow) turning away from officers trying to corral rioters out of the door*

Rather than leaving the building when he saw another bout of violence, Bozell turned around and walked deeper into the Capitol building. By this time, officers had formed a line behind the rioters ("line 6") and directed rioters to exit the building out of the nearby Senate Carriage Door. Rioters, Bozell included, refused to leave. A rioter standing next to Bozell exclaimed, "this

14

is our country, this is our house, that's it!" The rioters overran the police line and continued deeper

into the building.



*Govt Ex. 404 showing Bozell (yellow circle) with other rioters facing an officer line and resisting the officers' attempts to corral the rioters out of the nearby Senate Carriage Door*

Bozell walked back through the Senate Wing Foyer and marched through the building into

the Memorial Hall alongside a swarm of rioters.



*Govt Ex. 108 showing Bozell (yellow arrow) moving through the Memorial Door passage with a swarm of rioters*

As Bozell and a group of rioters approached a staircase, Bozell again separated from the

group and attempted to open the Law Library Door.



*Govt Ex. 430 showing Bozell (yellow circle) attempting to open the doors of the Law Library*

Unable to enter the Law Library, Bozell ascended the stairs to the second floor. As he did, Bozell looked directly at a man emphatically stating, "we want a fair vote!" Bozell entered the Rotunda.



*Govt Exs. 121, 123 showing Bozell (yellow arrow) in the Rotunda with other rioters*

Bozell then left the Rotunda and entered another private space: the Office of the Speaker of the Senate, Nancy Pelosi. When he exited Congresswoman Pelosi's office, Bozell appeared to be carrying something in his hand.



*Govt Ex. 120 showing Bozell (yellow circle) entering Speaker Nancy Pelosi's Office, left, and later exiting with something in hand (red arrow)*

Bozell next entered the foyer near the Rotunda Door where a group of rioters had amassed.

The rioters were collectively pushing into the secured Rotunda Door, attempting to force it open,

despite officers standing guard on both the interior and exterior of the door ("line 7"). Bozell joined

the rioters and used his body weight to push the doors open.





*Govt Exs. 116, 407, 132, respectively, showing Bozell (yellow circle) pushing with rioters to force open the Rotunda Doors as police officers guarded the doors*

Bozell and the rioters successfully forced open the doors, allowing another flood of rioters into the building. Bozell then ascended a set of nearby stairs to the third floor and walked down the East Corridor on the Senate side of the building.

18

 

*Govt Exs. 113, 134 showing Bozell (yellow circle) ascending staircase to the third floor, left, and proceeding down a hallway towards the Senate Chamber, right*

On his route, Bozell peered out the window – looking east. At this time, he would have seen hordes of police officers trying to regain control of the East Plaza.

Bozell reached the Senate Gallery Hallway. A few officers were frantically attempting to secure the doors of the Senate Chamber where the Vice President and the Senate had recently evacuated. As Bozell approached, rioters physically assaulted the officers and pushed them out of the way so that the rioters could gain access to the Senate Chamber.

 

*Govt Exs. 114, 435.6 showing Bozell approaching the doorway to the Senate Chamber as rioters overran and overthrew officers attempting to lock the doors*

Bozell and other rioters flooded into the Senate Gallery. Rioters chanted "TREASON! TREASON!" Bozell unpacked a bag that he found filled with emergency supplies.

 

*Govt Ex. 435 showing Bozell as one of the first rioters to enter the Senate Chamber, left, and Bozell rustling through an emergency supply bag and removing a rope, right*

Bozell climbed over handrails to make his way to the other side of the Senate Gallery. Bozell moved one of the C-SPAN cameras that was live recording the Senate chambers, obstructing that camera from recording rioters ransacking the chamber.



*Govt Ex. 218 showing Bozell moving a CSPAN camera to face the ground so that it would not record the rioters*

Bozell left the Senate Gallery and descended to the second floor. He walked on the Senate Chamber Floor at 2:49 p.m. While on the Senate Floor, Bozell appeared to communicate on his phone. He also directed rioters in the Gallery to push the C-SPAN cameras down.

20



*Govt. Ex. 305 showing Bozell (yellow arrow) directing to move the C-SPAN cameras down*

About six minutes later, Bozell left the Senate Floor. With officers behind him, Bozell made his way back past the Ohio Clock Corridor and descended to the first floor.



*Govt Ex. 129 showing Bozell (yellow circle) leaving the Ohio Clock Corridor and descending to the first floor*

Once alone, Bozell walked past the North Appointment's Desk towards the Senate Parliamentarian's Office.



*Govt Ex. 105 showing Bozell (yellow circle) passing the North Appointment's Desk and walking towards the Parliamentarian's Office*

Around the same time, a fresh wave of rioters breached the nearby Parliamentarian's door and were facing off with an officer line just down the hall from Bozell. That group of rioters eventually reached the North Appointment's Desk. Bozell watched as rioters attempted to break through the police line; he turned around and walked back towards the Senate Chamber.



*Govt Ex. 106 showing Bozell (yellow circle) watching as rioters fight to get past police officers*

Officers escorted Bozell out of the North Door at 3:07 p.m. – more than 50 minutes after he entered the building.

22



*Govt Exs. 307 and 217 showing Bozell (yellow circle) exiting the Capitol building out the North Door*

Once outside, Bozell remained on Capitol grounds, near the North Doors as officers continued to expel rioters from the building. Bozell then marched back to the west front and reapproached the Senate Wing Doors where he remained until after 3:45 p.m.

## II.    The Charges

The government has charged the defendant, Leo Brent Bozell IV, with ten crimes relating to his participation in the riot that took place during Congress's meeting at the United States Capitol on January 6, 2021, to certify the Electoral College vote for President.

1.  Obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2), 2.

2.  Destruction of government property, in violation of 18 U.S.C. §§ 1361, 2.

3.  Destruction of government property, in violation of 18 U.S.C. §§ 1361, 2.

4.  Civil disorder, in violation of 18 U.S.C. § 231(a)(3).

5.  Assaulting, resisting, and impeding certain officers, in violation of 18 U.S.C. § 111(a)(1).

6.  Entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1).

23

7. Disorderly or disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2).

8. Disorderly and disruptive conduct in any of the Capitol Buildings with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress or either House of Congress, in violation of 18 U.S.C. § 5104(e)(2)(D).

9. Act of physical violence in the Capitol Grounds or Buildings, in violation of 40 U.S.C. § 5104(e)(2)(F).

10. Parading, demonstrating, and picketing in a Capitol Building, in violation of 18 U.S.C. § 5104(e)(2)(G).

The defendant has pleaded not guilty to all charges.

## III.   Elements of the Crimes Alleged

### A.   Count One: 18 U.S.C. §§ 1512(c)(2), (2)

Count 1 of the Superseding Indictment charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law. Count 1 also charges the defendant with aiding and abetting others to commit that offense.

Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant attempted to or did obstruct or impede an official proceeding.

Second, the defendant intended to obstruct or impede the official proceeding.

Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

Fourth, the defendant acted corruptly.

<u>Definitions</u>

To "obstruct" or "impede" means to block, interfere with, or slow the progress of an official proceeding.

The term "official proceeding" includes a proceeding before Congress. The official proceeding need not be pending or about to be instituted at the time of the offense. If the official proceeding was not pending or about to be instituted, the government must prove beyond a reasonable doubt that the official proceeding was reasonably foreseeable to the defendant. For purposes of this count, the term "official proceeding" means Congress' Joint Session to certify the Electoral College vote.[1]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident. In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.[2]

---

[1] In *United States v. Fischer*, 64 F.4th 329, 342 (D.C. Cir. 2023), the D.C. Circuit held "that congressional certification of the Electoral College count is an 'official proceeding'" for purposes of § 1512(c)(2). *See also* 18 U.S.C. § 1515(a)(1)(B) (defining "official proceeding" to include "a proceeding before the Congress"); § 1512(f)(1) ("For the purposes of this section—(1) an official proceeding need not be pending or about to be instituted at the time of the offense"). For the nexus requirement (that the official proceeding need be reasonably foreseeable), *see United States v. Sandlin*, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); *United States v. Aguilar*, 515 U.S. 593, 599-600 (1995). For other January 6 trials that have used this instruction, *see, e.g.*, *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25-26), *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 12), *United States v. Thompson*, 21-cr-161 (RBW) (ECF No. 832 at 26), *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); and *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 23).

[2] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United*

To act "corruptly," the defendant must use independently unlawful means or act with an unlawful purpose, or both. The defendant must also act with "consciousness of wrongdoing." "Consciousness of wrongdoing" means with an understanding or awareness that what the person is doing is wrong or unlawful.

Not all attempts to obstruct or impede an official proceeding involve acting corruptly. For example, a witness in a court proceeding may refuse to testify by invoking his or her constitutional privilege against self-incrimination, thereby obstructing or impeding the proceeding, but that person does not act corruptly. In contrast, an individual who obstructs or impedes a court proceeding by bribing a witness to refuse to testify in that proceeding, or by engaging in other independently unlawful conduct, does act corruptly.[3] Often, acting corruptly involves acting with

---

States v. Carpenter, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); United States v. Kelly, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); United States v. Gunby, 21-cr-626 (PLF) (ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing United States v. Griffith, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and United States v. Rhine, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

[3] The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit; Arthur Andersen LLP v. United States, 544 U.S. 696, 706 (2005); United States v. Fischer, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); United States v. Gordon, 710 F.3d 1124, 1151 (10th Cir. 2013); United States v. Friske, 640 F.3d 1288, 1291 (11th Cir. 2011); United States v. Watters, 717 F.3d 733, 735 (9th Cir. 2013); United States v. North, 910 F.2d 843, 883 (D.C. Cir. 1990), withdrawn and superseded in part by United States v. North, 920 F.2d 940 (D.C. Cir. 1990); United States v. Sandlin, 575 F. Supp. 3d 16, 32 (D.D.C. 2021); United States v. Caldwell, 581 F. Supp. 3d 1, 19-20 (D.D.C. 2021); United States v. Mostofsky, 579 F. Supp. 3d 9, 26 (D.D.C. 2021); United States v. Montgomery, 578 F. Supp. 3d 54, 82 (D.D.C. 2021); United States v. Lonich, 23 F.4th 881, 902-03 (9th Cir. 2022). For other January 6 trials that have used similar instructions, see, e.g., United States v. Williams, 21-cr-377 (BAH) (ECF No. 112 at 7), and United States v. Reffitt, 21-cr-32 (DLF) (ECF No. 119 at 25-29); United States v. Kelly, 21-cr-708 (RCL) (ECF No. 101 at 10).

the intent to secure an unlawful advantage or benefit either for oneself or for another person.[4]

While the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct an official proceeding is not negated by the simultaneous presence of another purpose for his conduct.[5]

<u>Aiding and Abetting</u>

In this case, the government further alleges that the defendant committed obstruction of an official proceeding by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count 1.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and

---

[4] This last line, which incorporates aspects of the lead and concurring opinions in *United States v. Fischer*, 64 F.4th 329, 340 (D.C. Cir. 2023) (opinion of Pan, J.); *id.* at 352 (Walker, J., concurring), was provided in *United States v. Nordean, et al*, 21-cr-175 (TJK) (ECF No. 767 at 31-32), *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10), and *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 24). In denying the defendant's request for a new trial following the D.C. Circuit's opinion in *Fischer*, *United States v. Sheppard* held that the concurring opinion in *Fischer* did not create any binding precedent or change in the law that affects the definition of the word "corruptly." 21-cr-203 (JDB) (ECF No. 105 at 20). The jury in *Sheppard* was given a similar instruction to the one set forth here. *Id.* at 2. In *United States v. Harris*, 21-cr-189 (CJN), Judge Nichols rejected the defendant's argument that "corruptly" requires proof of a dishonest act. *Id.*, Transcript of Closing Arguments and Bench Verdict, Jun. 14, 2023, at 6).

[5] *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 10).

that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of obstruction of an official proceeding because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed obstruction of an official proceeding by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that obstruction of an official proceeding was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of obstruction of an official proceeding.

Fifth, that the defendant did that act or acts with the intent that others commit the offense of obstruction of an official proceeding.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be

28

against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of obstruction of an official proceeding as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

**B.      Count Two and Count Three: 18 U.S.C. §§ 1361, (2)**

Count 2 and Count 3 of the Superseding Indictment charge the defendant with corruptly obstructing an official proceeding, which is a violation of federal law. Count 2 and Count 3 also charge the defendant with aiding and abetting others to commit that offense.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant injured, damaged, or destroyed property.[6]

Second, the defendant did so willfully.

Third, the property involved was property of the United States, or of any department or agency thereof, or any property which had been or was being manufactured or constructed for the United States, or any department or agency thereof; however, the government does not need to prove that the defendant knew that the property belonged to the United States.[7]

Fourth, the damage to the property in question exceeded the sum of $1,000.

<u>Definitions</u>

The term "department" means one of the departments of the executive branch (such as the Department of Homeland Security) or the legislative branch (such as Congress). The term "agency" includes any department, independent establishment, commission, administration,

---

[6] Although Section 1361 refers to committing a "'depredation' against" property, the Modern Federal Jury Instructions do not use that term, instead using "damaged (*or* destroyed)," because "the term used in the statute – 'depredation' – is unlikely to be in the vocabulary of the average juror. . . . Instead, as courts routinely refer to 18 U.S.C. § 1361 as involving 'damage' to government property, that term is substituted." 2 Modern Federal Jury Instructions, ¶ 44A.01, Comment to Instruction 44A-4 (footnote with case citations omitted). Similarly, the Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina (Eric William Ruschky, 2020 Online Edition) use "injured or damaged" for this element.

[7] *United States v. LaPorta*, 46 F.3d 152, 158–59 (2d Cir. 1994) (Section 1361 does not require proof that defendants know that they are destroying government property; government's title to property is jurisdictional fact, not a scienter requirement); *United States v. Krause*, 914 F.3d 1122, 1127 (8th Cir. 2019) ("The plain language of the statute unequivocally does not demand that a person have knowledge that the property willfully injured or destroyed belongs to the United States. Although the word 'willfully' requires that Krause acted knowingly and voluntarily, the terms does not relate to the latter phrase: 'property of the United States.' This language merely lays out a jurisdictional prerequisite: the property must belong to the United States for a person to be guilty of this offense.") (citation omitted).

authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. While the government must show that a defendant knew that the conduct was unlawful, the government does not need to prove that the defendant was aware of the specific law that his conduct violated.[8]

<u>Aiding and Abetting</u>

In this case, the government further alleges that the defendant committed destruction of government property, as charged in Count 2 and Count 3, by aiding and abetting others in committing these offenses. This is not a separate offense but merely another way in which the government alleges that the defendant committed these offenses in Count 2 and Count 3.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

---

[8] As the Supreme Court has explained, "willfully" is "a word of many meanings whose construction is often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 191 (1998) (internal quotation marks omitted). "As a general matter, when used in the criminal context, a 'willful' act is one undertaken with a bad purpose. In other words, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* at 191-92 (internal quotation marks omitted).

In order to find the defendant guilty of destruction of government property because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed destruction of government property by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that destruction of government property was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of destruction of government property.

Fifth, that the defendant did that act or acts with the intent that others commit the offense of destruction of government property.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the

fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed, but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of destruction of government property as an aider and abettor. The government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

### C.      Count Four: 18 U.S.C. § 231

Count 4 of the Superseding Indictment charges the defendant with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

Second, at the time of the defendant's act the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

<u>Definitions</u>

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia. It also means commerce wholly within the District of Columbia.[9]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[10]

---

[9] Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *see also United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 18); *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 21).

[10] *See* 18 U.S.C. § 232(3).

34

The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) or the legislative branch. The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States. The term "instrumentality" includes any other formal entity through which the government operates, such as Congress or the United Sates Capitol Police.[11]

For the U.S. Capitol Police, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[12]

---

[11] *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word 'instrumentality' generally are broad. Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999). Webster's Third New International Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out.' Webster's Third New International Dictionary 1172 (1971).").

[12] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 19). *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Green*, 927 F.2d 1005, 1008 (7th Cir. 1991) ("Given the sweep of the phrase 'official duties,' the district court did not err in instructing the jury that the duties of a federal prison employee, even a food service worker, extend to 'safekeeping, protection and discipline.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.' We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

The term "knowingly" has the same meaning described in the instructions for Count 1.

**D.     Count Five: 18 U.S.C. § 111**

Count 5 of the Superseding Indictment charges the defendant with assaulting, resisting, or impeding an officer or an employee of the United States who was then engaged in the performance of his official duties, which is a violation of federal law. Count 4 of the Superseding Indictment additionally charges that the acts in violation of his section involve physical contact with the victim and the intent to commit another felony.

<u>Elements</u>

To find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officers of the United States Capitol Police.

Second, the defendant did such acts forcibly.

Third, the defendant did such acts voluntarily and intentionally.

Fourth, the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of their official duties.

Fifth, the defendant made physical contact with Officers or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offenses charged in Count 1, 2, 3, and 4.

Definitions

A person acts "forcibly" if he used force, attempted to use force, or threatened to use force against the officer. Physical force or contact is sufficient but actual physical contact is not required. You may also find that a person who has the present ability to inflict bodily harm upon another and who threatens or attempts to inflict bodily harm upon that person acts forcibly. In such case, the threat must be a present one.[13]

The term "assault" means any intentional attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so. To find that the defendant committed an "assault," you must find beyond a reasonable doubt that the defendant intended to inflict or to threaten injury.

The terms "resist," "oppose," "impede," "intimidate," and "interfere with" carry their everyday, ordinary meanings.

It is not necessary to show that the defendant knew the person being forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with was, at that time, carrying out an official duty so long as it is established beyond a reasonable doubt that the officer was, in fact, carrying out an official duty and that the defendant intentionally forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with that officer.[14]

---

[13] *United States v. Taylor*, 848 F.3d 476, 493 (1st Cir. 2017) ("The element of 'forcible' action can be met by a showing of either physical contact with the federal agent, or by such a threat or display of physical aggression toward the officer as to inspire fear of pain, bodily harm, or death.") (quotation marks omitted) (citing cases).

[14] *United States v. Celentano*, 22-cr-186 (TJK) (ECF No. 64 at 12); *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 30).

### E.      Count Six: 18 U.S.C. § 1752(a)(1)

Count 6 of the Superseding Indictment charges the defendant with entering or remaining in a restricted building or grounds, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

>       First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

>       Second, the defendant did so knowingly.

<u>Definitions</u>

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count 1.

### F.      Count Seven: 18 U.S.C. § 1752(a)(2)

Count 7 of the Superseding Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

Definitions

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[15]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[16]

The term "knowingly" has the same meaning described in the instructions for Count 1.

The terms "restricted building or grounds" has the same meanings described in the instructions for Count 6.

### G.   Count Eight: 40 U.S.C. § 5104(e)(2)(D)

Count 8 of the Superseding Indictment charges the defendant with disorderly and disruptive conduct in a Capitol Building, which is a violation of federal law.

---

[15] *United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

[16] Redbook 6.643.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings.

Second, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, the defendant acted willfully and knowingly.

Definitions

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C.

The term "House of Congress" means the United States Senate or the United States House of Representatives.

"Disorderly conduct" and "disruptive conduct" have the same meaning described in the instructions for Count 7. For purposes of this offense, "the orderly conduct of a session of Congress or either House of Congress" includes the actions of Congress' Joint Session to certify the Electoral College vote.[17]

The term "knowingly" has the same meaning described in the instructions for Count 1. The term "willfully" has the same meaning described in the instructions for Count 2 and Count 3.

---

[17] *See United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 17).

**H.      Count Nine: 40 U.S.C. § 5104(e)(2)(F)**

Count 9 of the Superseding Indictment charges the defendant with an act of physical violence in the Capitol Building or Grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence within the Capitol Buildings or Grounds.

Second, the defendant acted willfully and knowingly.

Definitions

The term "act of physical violence" means any act involving an assault or other infliction or threat of infliction of death or bodily harm on an individual; or involving damage to, or destruction of, real or personal property.

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions for Count 8. The term "knowingly" has the same meaning described in the instructions for Count 1. The term "willfully" has the same meaning described in the instructions for Count 2 and Count 3.

**I.      Count Ten: 40 U.S.C. § 5104(e)(2)(G)**

Count 10 of the Superseding Indictment charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

> First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

> Second, the defendant acted willfully and knowingly.

Definitions

The terms "parade" and "picket" have their ordinary meanings. The term "demonstrate" refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying.[18]

The terms "Capitol Buildings" and "Capitol Grounds" have the same meaning described in the instructions for Count 8. The term "knowingly" has the same meaning described in the instructions for Count 1. The term "willfully" has the same meaning described in the instructions for Count 2 and Count 3.

---

18 *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *see also Bynum v. United States Capitol Police Board*, 93 F. Supp. 2d 50, 58 (D.D.C. 2000).

**IV.     List of Stipulations**

In an effort to expedite the presentation of evidence, the government has proposed the following stipulations:

1. To facts regarding the Capitol Building and Grounds;

2. To facts regarding the Certification of the Electoral College Vote that took place on January 6, 2021;

3. That the events on the Capitol Grounds and in the Capitol Building on January 6, 2021 constituted a Civil Disorder;

4. That the Civil Disorder on January 6, 2023 obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in Commerce;

5. That the Civil Disorder adversely affected a "federally protected function";

6. That officers from the U.S. Capitol Police were engaged in their official duties, and officers from the Metropolitan Police Department responded to assist them;

7. To the admissibility and authenticity of the USCP CCTV and CSPAN video;

8. To the authenticity of government exhibits, including open source video footage and photographs;

9. That the FBI followed standard protocols for device extraction and that the exhibits containing content from the defendant's cell phone is authentic and admissible;

10. To the defendant's identification and presence on the Capitol Grounds and in the Capitol building;

11. To the transcripts of four government witnesses who have previously testified in trials regarding the breach of the United States Capitol, as evidence in this case; and

12. To the cost of damage done to the Capitol by the defendant.

The parties will continue to cooperatively discuss stipulations to expedite the presentation of evidence.

## V.      List of Government Witnesses

The government has attached to this filing our witness list. We have briefly summarized the expected testimony of each witness:

1.      <u>Captain Carneysha Mendoza, USCP (Stipulated Testimony)</u>

The parties have preliminarily stipulated to the admission of a trial transcript and accompanying exhibits containing Captain Mendoza's testimony from *United States v. Padilla*, 21-cr-214 (Tr. May 1, 2023).[19] The government expects that transcript and accompanying exhibits will be introduced as evidence at trial as Government Exhibit 901.

2.      <u>Captain Sean Patton, USCP</u>

USCP Captain Patton is expected to testify regarding the restricted perimeter that was established around the Capitol grounds on January 6, 2021, and how rioters trespassed over that perimeter. Captain Patton can testify to the authenticity of the U.S. Capitol Police surveillance footage and can identify areas of the Capitol building.

3       <u>Inspector Lanelle Hawa, United States Secret Service (Stipulated Testimony)</u>

The parties have stipulated to the admission of a trial transcript and accompanying exhibits containing Ms. Hawa's testimony from *United States v. St. Cyr*, 22-cr-185 (Tr. March 7, 2023). The government expects that transcript and accompanying exhibits will be introduced as evidence at trial as Government Exhibit 902.

Inspector Hawa testified regarding the restricted perimeter surrounding the U.S. Capitol building and grounds and the presence of then Vice President Pence and his immediate family

---

[19] The parties have agreed to these stipulations in principle, but the defendant has not yet signed the stipulations. If the defendant does not sign the stipulations by the trial date, the government will present live testimony.

within the restricted perimeter from the afternoon of January 6, 2021 until the morning of January 7, 2021.

    4.    <u>Daniel Schwager, former General Counsel to the Secretary of the U.S. Senate (Stipulated Testimony)</u>

The parties have stipulated to the admission of a trial transcript and accompanying exhibits containing Mr. Schwager's testimony from *United States v. Hostetter*, 21-cr-392 (Tr. July 6, 2023). The government expects that transcript and accompanying exhibits will be introduced as evidence at trial as Government Exhibit 903.

On January 6, 2021, Mr. Schwager was the General Counsel to the Secretary of the U.S. Senate. Mr. Schwager's testimony establishes that Congress had convened on January 6, 2021 to certify the results of the 2020 presidential election, pursuant to their constitutional and statutory duties. Mr. Schwager's testimony demonstrates that Congress was disrupted as a direct result of the rioters' breach of the Capitol Building. Mr. Schwager testified regarding Congress's Certification of the Electoral College vote (the "Certification proceeding"), including an explanation of the provisions governing the Certification proceeding. Mr. Schwager also testified about the Certification proceeding, as it occurred on January 6 and 7, 2021.

    5.    <u>Edward Tippett, Safeway Food and Drug (Stipulated Testimony)</u>

The parties have stipulated to the admission of a trial transcript and accompanying exhibits containing Mr. Tippett's testimony from *United States v. GossJankowski*, 21-cr-123 (Tr. March 9, 2023). The government expects that transcript and accompanying exhibits will be introduced as evidence at trial as Government Exhibit 904.

On January 6, 2021, Mr. Tippett was a district manager at Safeway Stores, Incorporated. Mr. Tippett testified that on January 6, 2021, in response to the city-wide curfew imposed by

Mayor Bowser, Safeway closed all of its 12 Washington, D.C. stores at 4:00 p.m., instead of the regularly scheduled time of 11:00 p.m. Safeway's Washington, D.C. sales were between 18 and 47 percent less than they had projected on that day. Mr. Tippett also testified that Safeway's Washington, D.C. stores receive their shipments from a warehouse in Pennsylvania, but because the stores had to close and no employees were working, the scheduled shipments for the remainder of the day on January 6, 2021, could not be delivered.

      6.    <u>USCP Officers DesCamp, Murray, Moroziewicki, McMahon, Singh</u>

United States Capitol Police Officers Adam DesCamp, Bradley Murray, Joseph Moroziewicki, Thomas McMahon, and Bikram Singh were part of the police lines on the Northwest Stairs, all of which were overrun by rioters. The officers are visible in the various video footage and will testify to the circumstances as they were present in the area. Specifically, the officers are expected to testify that they and other officers guarded the NW Steps behind bike rack barriers to prevent the rioters from ascending the Northwest Stairs to the Upper West Plaza and accessing to the Capitol building. The officers will likely testify that the rioters used many means to overcome the officer line, including pulling at the bike racks, spraying chemical irritant at the officers, throwing objects at the officers, and ripping through the tarp that shielded the rioters from accessing the stairs. They will likely testify that the rioters, Bozell included, were successful in collectively overwhelming the officer line and that the rioters barreled through the police line on the Northwest Stairs, ultimately reaching the Capitol building.

      7.    <u>Victor Nichols, United States Capitol Police</u>

Officer Nichols was the first officer who responded to the initial breach of the Capitol at the Senate Wing Doors. Officer Nichols is visible in video footage and is expected to testify to the

circumstances as they were present at the initial breach. He's expected to testify that he deployed pepper spray at one of the rioters bashing in a window. When Officer Nichols realized that he was outnumbered and that the rioters had breached the building, Officer Nichols directed nearby media members away from the Senate Wing Door and ran to alert others of the breach.

Officer Nichols is also expected to testify that later in the day, he searched offices to locate Capitol Hill staffers who were barricaded in their offices. As Officer Nichols and his partner made their way throughout the Senate Wing of the building, they checked closed doors to assess whether any persons were hiding from the rioters and needed assistance in evacuating. Officer Nichols opened the door of the Mayfield room near the Ohio Clock Corridor and discovered the defendant in the room. Officer Nichols escorted Bozell out of the room.

> 8.   Keith Robishaw, United States Capitol Police

Officer Robishaw was on the Senate Floor when some of the rioters breached the Senate Chamber. Officer Robishaw is expected to testify that the Senate Wing Floor is a sacred place in the Unites States Capitol and even USCP Officers are not typically permitted on the floor. He is expected to testify that he saw many personal and official belongings and effects in the Senate Chamber after the Senate had evacuated.

> 9.   Matthew Alpert, United States Capitol Police

Mr. Alpert was one of the officers locking the doors of the Senate Chamber when a mob of rioters approached him. Mr. Alpert is expected to testify that the mob physically assaulted Mr. Alpert and his colleagues in order to force their way into the Senate Gallery.

> 10.   Daniel Wright, Special Agent, Federal Bureau of Investigation

Daniel Wright is a Special Agent with the FBI and the lead agent on this case. Special

Agent Wright is expected to testify about the investigation into the defendant, including his identification, arrest, and legal process. Special Agent Wright executed the search warrant in this case and reviewed the contents of the defendant's cell phone. Special Agent Wright will likely testify to relevant items found on the defendant's cell phone. SA Wright will also likely testify about the defendant's whereabouts on the Capitol Grounds and in the Capitol Building on January 6, as well as statements by the defendant relevant to his actions on that day.

## VI.  List of Government Exhibits

Attached. The government reserves the right to supplement this exhibit list.

## V.  Issues in Dispute

The parties are working cooperatively to resolve any issues in dispute to streamline the presentation of evidence.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
DC BAR NO. 481052

By:

_____/s/_____

ASHLEY AKERS
Trial Attorney (Detailed)
MO Bar No. 69601
Ashley.akers@usdoj.gov
(202) 353-0521

Brendan Ballou
Special Counsel
DC Bar No. 241592
Brendan.ballou-kelley@usdoj.gov
(202) 431-8493

48